UNITED STATES, Appellant and Cross-Appellee

v.

JOHN E. SCHULLER, Sergeant, U. S. Army,
Appellee and Cross-Appellant

5 USCMA 101, 17 CMR 101

No. 4240

Decided November 5, 1954

Lᴛ Coʟ William R. Ward, U. S. Army, and 1sᴛ Lᴛ Donald M. Sukloff, U. S. Army, for Appellant and Cross-Appellee.

Lᴛ Coʟ Herman P. Goebel, Jr., U. S. Army, and 1sᴛ Lᴛ David J. Conroy, U. S. Army, for Appellee and Cross-Appellant.

ROBERT E. QUINN, Chief Judge:

In accordance with a number of previous Army decisions, a board of review reversed the accused's conviction on the ground that the law officer had signed and submitted the pretrial Staff Judge Advocate's advice to the convening authority. The Judge Advocate General has asked this Court to review the legal correctness of the board of review's determination. In addition, we granted the accused's petition for review to determine whether or not there was sufficient compliance with Article 34(a), Uniform Code of Military Justice, 50 USC § 605.

During the challenge procedure, trial counsel asserted that the "records of this case disclose no ground for challenge," and the law officer, when asked, said that he "knew of no reason" which would constitute a ground for challenge against him. However, the law officer acted as Acting Staff Judge Advocate to the convening authority and had subscribed and submitted the pretrial advice required by Article 34, supra. In that document, he advised the convening authority that the expected evidence would establish that the accused was guilty of rape and wrongful appropriation, and that the specifications, which also included a charge of adultery, were "warranted by the evidence indicated in the report of investigation." He recommended trial by general court-martial.

Attached to the pretrial advice are certain certificates. One of these, dated three days after the trial, is by the law officer. In it he says that on August 3, 1953, about a month before the trial, he reported for duty to Headquarters, Seventh Army. Almost immediately, he was told that he would be the Acting Staff Judge Advocate in the absence of the regular Staff Judge Advocate, who was going on a ten-day leave. He was also told by the regular Staff Judge Advocate that he had "examined the charge sheets and allied papers" in this case and he had directed the preparation of the Staff Judge Advocate's advice under Article 34. Moreover, he was informed that he would probably be the law officer in this case. On August 12, the written "form advice" was submitted to him as Acting Staff Judge Advocate. He signed it "without reading or checking the file, or knowing anything about the expected evidence." He gave no thought to the case until September 2, 1953, when he was named as law officer for the court which tried the accused. His first conscious realization of his previous connection with the case occurred when it was brought to his attention the day after the trial. Finally, he certified that he did not prejudge the accused's guilt, and the advice that he signed was "made and directed" by the regular Staff Judge Advocate before he went on leave.

The law officer's certificate is supported by one made by the regular Staff Judge Advocate. Since his statements are of particular importance, we set out the certificate in full:

"I certify that on or about 4 August 1953, the case of Sgt John E Schuller, the details of which were already known by me, was brought to my attention with a view to determining appropriate disposition. It was then reported to me verbally that the Investigating Officer was preparing his final report recommending trial by general court-martial.

I had already fully discussed the matter with the Chief of Staff, and knew that the Commanding General expected trial by general court-martial. I therefore directed that the charges be so referred immediately upon receipt of all necessary papers. I also directed the preparation of a formal recommendation of the Staff Judge Advocate to that effect. There was further discussion concerning personnel to comprise the court, in the course of which I indicated to Lt Col Roy H. Steele, JAGC, that he would be designated Law Officer. Lt Col Steele had reported for duty the preceding day, 3 August 1953, and knew nothing of the case.

I was absent from Headquarters from 5 August to 15 August, and

**103**

upon my return verified that the case had been properly referred for trial. I also learned that Lt Col Roy H Steele, JAGC, had in my absence, signed a recommendation for trial, but it was my conclusion he was merely carrying out my directions as my agent, as I had left him no authority to exercise independent judgment in this matter."

Two other certificates dated October 1953, are also appended to the pretrial advice. In one, trial counsel has certified that on "several occasions" he submitted his pretrial file, which included the Staff Judge Advocate's advice, to defense counsel for use in preparation of the defense case. In the other certificate, defense counsel acknowledges receipt and use of the trial counsel's file. He also states that on September 5, he was informed the law officer had acted as Acting Staff Judge Advocate. He then checked the file furnished him and found a carbon copy of the advice prepared for the signature of the Acting Staff Judge Advocate. However, he unqualifiedly denies he was ever aware of the fact that the law officer had signed the pretrial advice. To complete the background of the pretrial advice, we note the allied papers show that an Article 32 investigation was not ordered by the convening authority until August 5, 1953; the Investigating Officer's report is dated August 6, 1953, and it was not forwarded until August 7.

The certificates of the law officer and the Staff Judge Advocate indicate a surprising deprivation, ▬▬▬▬ ▬ by legal officers of the Judge Advocate General Corps, of an important pretrial protection granted to an accused by the Uniform Code. Our decision in United States v. Guest, 3 USCMA 147, 11 CMR 147, clearly delineates the obligations of a Staff Judge Advocate. Yet, here a fundamental part of the pretrial procedures is described as mere "form." Certainly, Congress never intended that the Staff Judge Advocate's advice be regarded as an empty formality. See: Hearings before House Armed Services Committee, 81st Congress, 1st Session, on H.R. 2498, Uniform

Code of Military Justice, pages 910–911. In disregard of his statutory duty, a high-ranking legal officer has placed his signature on an instrument which purports to show that he personally examined the evidence, and that it was his considered professional opinion it supported the charges which he recommended for trial by general court-martial, when, actually, the report was signed and the recommendation made "without reading or checking the file, or knowing anything about the expected evidence."

The Government maintains that the Acting Staff Judge Advocate was really only an agent of the regular Staff Judge Advocate, and the latter was the one who directed the preparation of the advice. This does not constitute a satisfactory answer. Apart from the fact that the Acting Staff Judge Advocate did not indicate he was merely acting for the regular Staff Judge Advocate, the responsibility for the advice is that of the person occupying the office at the time it is signed. Under Article 34, it is his duty to consider the evidence before making any recommendation. In this case, the proper exercise of that responsibility was particularly important. The file contained a report by a Medical Service Corps officer, who had been ordered by the accused's Commanding Officer to investigate the incident out of which the charges arose. This report stated that the evidence did not support the charge of rape. In the pretrial advice it was set out that the "expected evidence . . . shows that accused . . . raped" the alleged victim. Significantly, the court acquitted the accused of that charge.

Even if we accept the Government's claim of agency, it conclusively appears that the regular Staff Judge Advocate also overlooked his statutory duty to examine and evaluate the expected evidence before submitting the advice. He may have had some knowledge of the "details," but it is obvious he never saw the investigating officer's report. By his own admission, he was absent from August 5 to August 15; the formal pretrial investigation under Article 32 was not ordered until Au-

gust 5; and the investigation report itself is dated August 6, and was not forwarded until August 7. Manifestly, this officer could not have known what the investigating officer would find and what his recommendations would be. Thus, he certainly had not made an independent and informed appraisal of the evidence. The obvious conclusion to be drawn from their own certificates is that both these officers, however honest their intentions, deprived the accused of his right to have a qualified Staff Judge Advocate make an independent and professional examination of the expected evidence and submit to the convening authority his impartial opinion as to whether it supported the charges.

In addition to the plain disregard of Article 34, there is the failure of trial counsel and the law █ officer to disclose the latter's prior connection with the case. Trial counsel declared that the records contained no ground for challenge; and when asked if he knew of any facts which would constitute a ground for challenge, the law officer replied, "I know of no reason." But, according to the Manual, the fact that the law officer had acted as Staff Judge Advocate to the convening authority is a proper ground for challenge. Manual, paragraph 62f, page 92. It seems unusual that the latter should have forgotten his previous action as Staff Judge Advocate, since a rape case is by no means a run-of-the-mill affair; and he was specifically told by the regular Staff Judge Advocate, less than a month before, that he would probably be the law officer. We are, nevertheless, willing to accept his forgetfulness as a fact. However, under the Manual, trial counsel and the law officer have an affirmative duty to disclose any ground for challenge which may exist. Manual, supra, paragraph 62d, page 90. Neither made any such disclosure. In his own certificate, trial counsel does not even suggest that he did not know of the disqualification of the law officer. Instead, he says only that he made his pretrial file available to the defense counsel, and that the file contained the original advice. On the other hand, defense counsel has unequivocally denied he knew the law officer had signed the pretrial advice as Acting Staff Judge Advocate. He admits, however, that the file given to him contained an unsigned carbon copy of the advice. The Government has seized upon these circumstances to assert a claim of waiver of the right to challenge.

In United States v. Glaze, 3 USCMA 168, 11 CMR 168, we pointed out that defense counsel may be chargeable with knowledge of such facts constituting a ground for challenge as can be ascertained from "a cursory glance" at the order appointing a court member. We reached that conclusion because a copy of the order appointing the court is given directly to defense counsel at the start of the challenge procedure, and it is plainly intended to be used by him for challenge purposes. See: Manual, supra, Appendix 8a, page 501. These conditions do not apply to the pretrial advice. See: Manual, paragraphs 35c, 44h, pages 50, 65. However, we need not determine whether the inclusion of the advice in the file given to defense counsel would, by itself, be a sufficient predicate for application of a doctrine of implied waiver. We are satisfied that to apply that doctrine to the facts of this case would be unjust.

The primary responsibility for disclosing grounds for challenge, which appear from the preliminary proceedings, rests upon the trial counsel. Manual, paragraph 62b, pages 89–90. Even if the law officer was unaware of his own disqualification, the trial counsel does not assert a like lack of awareness. On the other hand, the defense counsel unequivocally states that he did not know of the law officer's previous connection with the case. We are unwilling to charge the accused with the consequences of a failure to exercise due care, when it appears that trial counsel had actual knowledge of the disqualification, but still failed to disclose it, as it was his duty to do.

We turn now to a consideration of

the effect of the errors on the substantial rights of the accused. ■ In United States v. Bound, 1 USCMA 224, 2 CMR 130, we discussed the failure to excuse forthwith a member of the court who had acted as an investigating officer in the same case. Although we found that the ground of disqualification was self-operating within the meaning of the Manual, we expressly refused to decide whether the error was of such a nature as to require application of the doctrine of general prejudice. In that case, we preferred to reverse the conviction on a finding of specific prejudice. The disqualification here affects the law officer. This difference may require a different approach. Thus, disqualification by reason of prior action as Staff Judge Advocate to the convening authority may perhaps be generally equivalent to the disqualification of a Federal judge who has previously acted as District Attorney in the same case. Disqualification of that nature precludes the judge from sitting in the case, and any proceedings taken by him must be set aside. 28 USC § 455; United States v. Vasilick, 160 F2d 631 (CA3d Cir 1947). However, in view of the action which we propose to take, we need not pass upon this difference, and we express no opinion on the effect of the disqualification.

We recognize that, under Article 34, the convening authority, not the Staff Judge Advocate, actually makes the final decision as to whether the expected evidence is sufficient to support the charges, and whether they should be referred to trial. This factor may have a bearing on the nature of the disqualification of the law officer which we have just discussed, but, again, we express no opinion on that matter. Our interest is in the fact that the convening authority was given an advice which purported to show a legal evaluation of the sufficiency of the evidence. If we presume regularity, we cannot doubt that his decision to refer the charges to trial was substantially influenced by the advice of his Staff Judge Advocate. Yet, that advice was not based upon any examination of the evidence. Essentially, therefore, the convening authority himself did not make a proper determination of the sufficiency of the evidence. On the other hand, if we look to the statement of the regular Staff Judge Advocate that he discussed the case with the Chief of Staff and knew the expectations of the convening authority, we find a disturbing intimation that the convening authority himself had determined to refer the charges to trial, without first finding, as required by Article 34(a), that the evidence indicated in the report of investigation warranted such action. The Staff Judge Advocate knew that on August 4 the convening authority "expected trial by general court-martial." However, the order directing an Article 32 investigation was not made until August 5, the report itself is dated August 6, and was forwarded on August 7. In either event, the convening authority could not have properly complied with the requirements of Article 34. The importance of compliance with, at least, this part of Article 34 is self-evident. In fact, Article 34 has recently been referred to by the United States Court of Appeals for the District of Columbia Circuit as justification for denial of a petition for habeas corpus. After he had been taken into custody on a charge of murder alleged to have been committed before his separation, a discharged service man sought release from the military authorities. One of the claims advanced was that to permit the military to try him would be a denial of basic due process rights, in the preliminary proceedings, which are accorded civilians. In rejecting this argument, the Court of Appeals said:

"This contention as to preliminary hearing really falls into two parts. The first concerns a hearing preliminary to trial. The second concerns a hearing preliminary to removal to the place of trial. In criminal cases in the courts the constitutional requirement for indictment affords opportunity for inquiry by an independent tribunal into probable cause before the accused is put to his defense. The Constitution specifically excepts cases arising in the land or naval

forces from the requirement of indictment. But the Uniform Code of Military Justice makes elaborate provisions for preliminary hearing before the accused is put to trial. Article 32 of the Code provides that charges shall not be referred to a general court-martial for trial until a 'thorough and impartial' investigation has been made. At such 'investigation' the accused has the right to counsel, civilian or military, and full opportunity to cross-examine witnesses against him and to present anything he may desire in his own behalf. If the charges are then forwarded, a statement of the substance of the testimony taken on both sides must accompany them. Article 34 provides that before directing trial the convening authority must secure the consideration and advise of his legal officer and shall not refer a charge for trial unless he has found that the charge is warranted by the report of the evidence upon investigation. These provisions of the Uniform Code seem to afford an accused as great protections by way of preliminary inquiry into probable cause as do requirements for grand jury inquiry and indictment. The record indicates, and indeed we must assume in the absence of showing to the contrary, that Toth will be afforded the full protection provided by the Uniform Code. Thus the basic purpose of a hearing preliminary to trial is being met by a method designed pursuant to constitutional provisions, and the method meets all elements essential to due process in that feature of the proceedings." [Talbot v. Toth, 215 F2d 22, 28 (CA DC Cir).]

We need not decide whether Article 34 was completely disregarded. It is clear that the Staff Judge Advocate's advice was prepared without compliance with the Article. Since this fictitious advice was given to the convening authority, there can be no doubt that he was influenced by it. These actions deprived the accused of important pretrial protections. When these deprivations are coupled with the failure of trial counsel and the law officer to disclose the latter's previous connection

with the case, we think that reversal of the conviction is proper.

In reaching this conclusion, we have not overlooked the respective claims of the Government and the ▮▮▮▮▮▮ ▮ accused that a board of review does not have the power to consider the pretrial advice as part of the record subject to review. The Government maintains that the advice is not part of the record. Conversely, the accused argues that the advice is part of the record, but claims that the certificates should not be considered with the advice.

The Uniform Code does not indicate what constitutes the record of trial. Article 60, 50 USC § 647, provides that after trial by general court-martial, "the record shall be forwarded to the convening authority." After taking final action, the convening authority is required to "forward the entire record" to the appropriate Judge Advocate General. Article 65, Uniform Code, 50 USC § 652. In cases required to be reviewed by a board of review, "the record" is referred to that body and it makes its determination "on the basis of the entire record." Article 66, Uniform Code, supra, 50 USC § 653. Further review by this Court is "on the record." Article 67(b), Uniform Code, supra, 50 USC § 654.

The Government relies on our opinion in United States v. Harvey, 2 USCMA 609, 10 CMR 107. In that case we pointed out the record did not include evidence which was not presented to the court-martial but was considered by the Staff Judge Advocate in his post-trial review. That principle does not apply to the issue in this case. The problem here is whether an appellate tribunal may consider the validity of important pretrial procedures, which are not only intended for the personal protection of an accused, but constitute an essential part of the military justice system. Military appellate tribunals have long regarded the pretrial advice as subject to their review for that purpose. See: United States v. Thorpe [CM 360188], 9 CMR 351, and cases cited therein. In United States v. Anderten, 4 USCMA 354, 15 CMR 354, this Court looked to the pretrial advice

**107**

for the purpose of determining whether there had been compliance with Article 49(f), 50 USC § 624. We think it may also be considered for the purpose of showing compliance with Article 34, and for appellate review of the grounds for challenge, particularly since the Manual clearly contemplates that trial counsel will refer to the advice to ascertain whether the law officer previously participated in the case. Manual, supra, paragraph 62b, pages 89–90. Inasmuch as the advice may be considered in the appellate review, surely papers intended as corrections to it may also be considered. See United States v. Walters, 4 USCMA 617, 16 CMR 191. Consequently, we hold that the board of review had the power to review, as part of the case, the pretrial advice and its corrective certificates.

The decision of the board of review is affirmed.

Judge BROSMAN concurs.

LATIMER, Judge (dissenting):

I dissent.

The majority opinion fails to present many important facts in this case and consequently subjects those who handled it to unmerited scorn. At worst, the officers were guilty only of mental lapses which befall all of us. Of course, if I could attain perfection I would join the majority; but failing in that, I must permit others some latitude of error without criticizing them too harshly. As I view this record, the only important issue in this case is whether the accused was denied a substantial right with or without dereliction of duty by officers. If he was, and it prejudiced his cause, a reversal is required. If he was not, and in this instance I so find, then the cause should be affirmed. With that prelude, I think it will be profitable to understand certain facts not developed by the author judge.

On July 30, 1952, the accused had intercourse in the woods near Hockenheim, Germany, with the prosecuting witness, Mrs. Borle, a citizen of Switzerland who was visiting her sister in Germany. After the incident, she obtained the license number of the car which had been issued to the accused. The next day, July 31, 1952, she appeared at the 481st Criminal Investigation Division and complained that she had been raped the previous day by an American soldier. Later that day, accused was identified by her from a line-up of eight soldiers at Criminal Investigation Division Headquarters. The complaint initiated an investigation of the alleged crime by Master Sergeant Beesley, an experienced Criminal Investigation Division investigator. In the course of this investigation, which covered a period of twenty-seven days, eight witnesses were questioned; five signed statements, including one by the accused, were obtained; the prosecuting witness underwent a medical examination; blood stains on the clothing of both Mrs. Borle and the accused were analyzed and typed by the Military Police Crime Laboratory; three photographs were taken; a sketch was made of the area in which the act took place; and certain property of both accused and Mrs. Borle was held and marked as exhibits. In addition to Master Sergeant Beesley, who conducted the investigation, three other Criminal Investigation Division investigators worked on the case at least part of the time. All of this culminated in a report by the Sergeant, dated August 26, 1952, which stated that as a result of the foregoing investigation it was his conclusion that accused had had carnal knowledge of Mrs. Borle forcibly, feloniously, and against her will.

During the investigation, accused was released into the custody of his commanding officer and on August 12, 1952, the latter ordered an officer of his command to investigate the incident. This officer's report showed on its face that his investigation was superficial. Mrs. Borle had returned to Switzerland and he was unable to interview her. He took affidavits from the accused and his companion some three weeks after the incident, in which they attempted to impeach statements given by them to the Criminal Investigation Division within a day or two of the affair. His finding was that Mrs. Borle acquiesced in the act. It apparently was based on interviews with the

accused and his friends only, and on reported emotions Mrs. Borle is supposed to have displayed in the identification of the accused at the Criminal Investigation Division line-up. His recommendation was for summary court or Article 15 punishment only, and that in spite of the fact that adultery was conceded by the accused. He escaped the effect of accused's admissions by stating that Mrs. Borle had returned to Switzerland and would not be available as a witness. He states he could find no violation of the Uniform Code of Military Justice, but he finally concluded the accused could be tried for either absence without leave or disorderly conduct. It is noteworthy that this report was submitted August 19, 1952, one week before the Criminal Investigation Division report was completed and that it made no reference to that investigation. This, supposedly, is the report "by a medical service corps officer" referred to in the majority opinion as evidence that there was no basis for the rape charge and that, therefore, the Staff Judge Advocate did not do his job properly. It is readily understood why the report was not persuasive with him. And perhaps when making his recommendation, the Staff Judge Advocate kept in mind the well-known principle that there is a difference between the burden of proof necessary to support a recommendation for trial and one to support a finding of guilt. Merely because the court-martial failed to convict on the charge of rape does not establish an improper recommendation on his part.

No charges were brought against the accused at that time. The Criminal Investigation Division investigation was not pursued; the accused elected Article 15 punishment on the alleged absence without leave and disorderly conduct offenses; and a short time thereafter he was transferred back to the United States. In December 1952, interest in the case on the part of Seventh Army Headquarters was demanded. From what had previously transpired and subsequently occurred, it is reasonably certain that high Swiss and United States Government officials were the cause of the renewed interest. On February 25, 1953, Mrs. Borle was interviewed by the Assistant Staff Judge Advocate of the Seventh Army at Bern, Switzerland. He explained the difficulties involved in trying the accused, including the expense she would be required to assume, but she insisted on prosecuting and he so reported to the Staff Judge Advocate. This information had to be relayed to the Chief of Staff and the General as a command decision was made to try the accused. Charges against him alleging three offenses were signed March 2, 1953, and on July 31, 1953, he was flown from the United States to Germany to stand trial. It is the conduct of the two legal officers after his arrival at Seventh Army Headquarters which gave rise to the controversies at issue.

Since accused was acquitted of Charge 1 and its specification, alleging rape, we ordinarily would not concern ourselves with the effect of the officers' action on that Charge. However, since the majority opinion deals principally with that offense, I have referred to the facts bearing on it, and I will mention it again where it is pertinent to my discussion.

On the issue "Whether there was sufficient compliance with Article 34 in referring the charges for trial," section (a) of that Article directs the submission by the Staff Judge Advocate of a pretrial advice in the following language:

"Before directing the trial of any charge by general court-martial, the convening authority shall refer it to his staff judge advocate or legal officer for consideration and advice. The convening authority shall not refer a charge to a general court-martial for trial unless he has found that the charge alleges an offense under this code and is warranted by evidence indicated in the report of investigation."

The grounds voiced in the majority opinion for reversal seem to be twofold. First, the officer who signed the letter of advice disregarded his statutory duty by certifying to information which was unknown to him. Second, the Staff Judge Advocate violated his statutory duty by not making an

independent and informed appraisal of the evidence. In view of the fact that the thrust of the Court's opinion is extreme in its criticism of the two officers, I suppose it might be advisable to show how unsubstantial their alleged violations were. I shall treat the grounds listed above in reverse order.

There are two preliminary steps which the Code requires be completed before charges are referred for trial. These are a pretrial investigation and reference to the Staff Judge Advocate for consideration and advice. There cannot be any question about this case having been investigated properly and even if there were irregularities in that regard the Manual, paragraph 69a, states they are waived unless raised before plea. I mention waiver simply for the reason that it will subsequently appear that the Staff Judge Advocate made his recommendation on more information than was known to the pretrial investigating officer, and no contention was advanced before plea that the evidence before that officer was not adequate to support his recommendation. Moreover, there is no assertion that any incident happened during that hearing which would in any way add to or detract from the results of the Criminal Investigation Division investigation. Had there been insufficient evidence to support the conclusion, or had irregularities occurred in the proceedings, those deficiencies could have been reached prior to trial. Paragraph 69a states that substantial defects in a pretrial investigation are waived unless raised before plea. Paragraph 69c of the Manual states the appropriate method of contesting a pretrial investigation:

"c. *Defects arising out of the pretrial investigation.* — A substantial failure to comply with the requirements of 34 and Article 32 may be brought to the attention of the court by a motion for appropriate relief. Such a motion should be sustained only if the accused shows that the defect in the conduct of the investigation has in fact prevented him from properly preparing for trial or has otherwise injuriously affected his substantial rights. If the motion is sustained the court may grant a continu-

ance to enable the accused to prepare his defense properly, or may adjourn the proceedings to permit compliance with 34 and Article 32 and report the basis of its action to the convening authority. The latter may, after taking necessary action to cure the defect, return the record to the court with instructions to proceed with the trial."

I call attention to the fact that the charges in this case were not referred for trial by the convening authority until after three investigations, one by Sergeant Beesley, one by a Captain in accused's organization and the other by Major Phillips, the pretrial investigating officer. It is reasonably inferable from the record that the investigations by the Criminal Investigation Division and the unit officer were not in full compliance with Article 32 of the Code, but it is certain that all procedural and substantive safeguards were present in the investigation conducted by Major Phillips on August 6, 1953. Accused was present, was furnished the names of all witnesses, was shown the complete record of the investigation made by the Criminal Investigation Division and upon advice of counsel he refused to verify or make any comments about his prior incriminatory statements. Furthermore, he never asked for permission to furnish any further evidence and there was none offered. That investigation was the basis for a recommendation for trial by general court-martial and it stands unassailed. I must, therefore, assume the pretrial investigating officer's recommendation was legally supportable and he reached the same conclusion as did the Staff Judge Advocate.

With that as a background, I proceed to discuss the alleged failure of the Staff Judge Advocate to make an independent and informed appraisal of the evidence. It is to be noted that the Commanding General of the Seventh Army is, in this instance, charged with the final responsibility of finding that the charges are supported by the evidence. He was required to obtain advice from his counsellor before reference, but he was not required to follow the recommendation submitted to him. While the Gen-

eral's decision must have been formulated before the accused was returned from the United States, his last official act, which consisted of referring the case to the court, was performed sometime after the report of the investigating officer was in his possession. Had there been a conflict between this officer's recommendation and one submitted by the Staff Judge Advocate, the General could have adopted either. Because, by statute, before referring a case for trial, a General is required to obtain advice from his Staff Judge Advocate, does not demand that he obtain it at one sitting. He may gather it by a continuing process and there is not the slightest doubt that this General was kept fully and continuously informed on the history and development of this case, both legally and factually, by his Staff Judge Advocate. Some of the decisions reflected in the record had to be made by him. I make mention of a few bits of information which would be known by the General and his legal officer. On August 22, 1952, a close-out report covering the investigation made by the officer of accused's headquarters was forwarded to the Commanding General of the Seventh Army. On December 9, 1952, a telephone request from Seventh Army Headquarters was made to the Criminal Investigation Division asking that the complete report of the incident be forwarded for consideration. The report was dispatched, and it was received in the office of the Provost Marshal, Seventh Army, two days later. On February 25, 1953, Lieutenant Colonel Richard deF. Cleverly, an Assistant Staff Judge Advocate, was ordered to Bern, Switzerland, where he contacted Mrs. Borle and interviewed her, apparently with hopes that prosecution might be avoided. He made a written report of his interview to the Staff Judge Advocate on February 27, 1953. Apparently his inability to satisfy the complaining witness resulted in charges being prepared, as they were sworn to by him on March 2, 1953, and they alleged the accused was then stationed at Fort Knox, Kentucky. Upon the preferment of those charges, the General was charged with the responsibility of determining the disposition of them. The offenses alleged were rape, adultery, and misappropriation. On April 17, 1953, pursuant to direction of the General, orders were issued to take the deposition of Private Ernest M. Thies, a companion of the accused. At or about the same time Major Cecil L. Forinash, of the Staff Judge Advocate's Section, was detailed as defending counsel to represent the accused. Another Major from the same Section was detailed as trial counsel. Both continued in that capacity until after completion of review of the record of trial by the convening authority. On July 17, 1953, another directive was issued by the General to take the testimony of First Lieutenant Emmett Driscol Simonson. The same two members of the Judge Advocate's Section prepared the interrogatories and the cross-interrogatories. The first deposition was taken in Kansas City, Missouri, at the time the accused was stationed at Fort Knox, Kentucky. The Armored Center, Fort Knox, Kentucky, on July 22, 1953, issued travel orders directing the accused to report to Camp Kilmer, New Jersey, for shipment to United States Army, Europe. Those orders were supplemented on July 30, 1953, by similar ones issued at Headquarters, Camp Kilmer. These latter orders directed air transportation of the accused, under guard, to his final destination in Europe. On August 5, 1953, a letter was prepared in the office of the Staff Judge Advocate attaching the accused to Headquarters Special Troops, pending disposition of the offenses with which he was charged.

I have no reason to suspect that officers in the same section do not converse with each other, and I am morally certain this case was the subject of a number of conferences between them and with the General. The events and incidents I relate would be common knowledge to the General and his legal section at Army Headquarters, and they would so firmly fix this case in the mind of the Staff Judge Advocate that he would be imbecilic if he could not independently determine there was ample evidence and justification to recommend trial by general court-martial. Furthermore, it is unrealistic for anyone to believe that the various steps to revive the pro-

ceedings and return the accused to Germany could have been taken without the Judge Advocate knowing the status of the case in minute detail. Surely, he knows the important matters processed by his section, and this one was of more than ordinary consequence. In addition to the usual nature and notoriety of the proceeding, this Staff Judge Advocate had before him the following information: (1) an elaborate investigation of the incident by the Criminal Investigation Division, complete in every detail; (2) statements by the complaining witness contending she had been raped; (3) statements by the accused unqualifiedly admitting intercourse; (4) positive evidence that the accused was married; (5) a conclusion by the Criminal Investigation Division investigator that there was evidence against the accused to support a charge of rape; and (6) information disclosing all known witnesses and their purported testimony. I wonder what more a Staff Judge Advocate would need in order to make an independent and informed appraisal of the evidence and a predicate for a recommendation that the case be tried by a general court-martial. Any other recommendation would be advice of the sheerest stupidity. Moreover, I venture to suggest that the General had this case thoroughly and conscientiously reviewed by the Staff Judge Advocate before the accused was ordered to return to Germany for trial.

Now it so happens that on the fifth day of August 1953, the Staff Judge Advocate left his Headquarters for a ten-day absence. Prior to departure, he directed Major William G. Barry, of his military justice section, to prepare a letter to the General which was to contain his recommendation for trial by general court-martial. The letter was dictated by that officer and this is where an error, neither important nor prejudicial to this accused, occurred. The document was prepared for the signature of Lieutenant Colonel Roy H. Steele and he signed it in a personal instead of a representative capacity. He had arrived the day before and had been informed by the departing Staff Judge Advocate

that he would be Acting Staff Judge Advocate during the former's ten-day absence. The direction concerning the contents of the Staff Judge Advocate's letter of advice was given before the pretrial investigating officers' report had been reduced to writing and received in Army Headquarters. But again, I remark that every bit of information available to the investigating officer, and perhaps much more, was well known by the Staff Judge Advocate prior to the time he gave his directions. Certainly, he was not derelict in his duty in assuming the investigating officer would return a recommendation that the case be tried by a general court-martial. I believe it fair to say that any reasonable person possessed of the same information would unhesitatingly leave the same instructions, and it must be remembered that the Staff Judge Advocate is not bound by the recommendation of the investigating officer. He can act independently and make a contrary recommendation. However, in this case he was not gambling with a possible recommendation for dismissal. He was dealing with a certain course of action. Would it not be folly for the Commanding General to consider favorably having the accused flown from the United States to Germany for the purpose of standing trial on a charge of rape, which carries a possible death sentence, and then neither try the accused nor refer his case to a court-martial of general jurisdiction? Had the Staff Judge Advocate made any such recommendation, it would have been disregarded and certainly with justification. While it is conceded the Staff Judge Advocate may have anticipated the recommendations of the investigating officer, the fact remains that his estimate was correct. Of course, it can always be suggested that he could not be sure that additional evidence might not be produced. Where it would have come from I do not know, but the short answer is there was none offered and no contention is asserted that any was available. Other speculations may be imagined but when I deal with the realities of this case, I find the alleged disregard of duty by the Staff Judge Advocate to consist of making a proper estimate of a situation which, under the facts of this case, was neither pre-

mature nor incorrect. I believe it a generally accepted practice in any military headquarters, or in most businesses, or even in appellate courts, to have responsible officials anticipate courses of action and direct what is to be done when they have crystallized. To do the usual is not so reprehensible.

The majority opinion seems to find something sinister in the fact that the convening authority was already familiar with the facts of this case prior to receiving the Staff Judge Advocate's advice. I disagree. A convening authority can keep abreast of developments and know what business is being transacted by his headquarters. I believe it good staff procedure to keep the commanding officer fully advised at all times. He need not receive his knowledge in one package, and there is nothing in the Code or the Manual which prevents him from accumulating knowledge over a period of time. One of the principal weaknesses I find implicit in the Court's opinion is a mistaken notion that an accused has a right to a rigid and formalized crystallization of opinions. The reasoning seems to be that one officer cannot arrive at a conclusion until another one has acted formally on the record. Obviously, before making a decision on the reference of charges, the officer taking the action should acquire all information reasonably available, but one can hardly contend that this convening authority had violated that concept. All the Code requires is that prior to reference of charges there shall be a pretrial investigation, and that the charges shall subsequently be referred to the Staff Judge Advocate. It is conceded that the first was complied with, and as to the second, the whole litigation had been in the lap of the Staff Judge Advocate for almost a year. Merely because that officer reduced his opinion to writing before he received the written recommendation from the investigating officer does not prove he violated the Code or the principles of good administration of military justice. It is singular to note that the posture of the evidence and all legal questions were the same before and after the pretrial investigation and if the advice would have been solid had it been given after the hearing, it was solid when given.

I anticipate someone will suggest that my concept relegates a pretrial investigation to a hollow formality. If thought is given to the problem, a conclusion should be reached that such is not the case. A pretrial investigation is primarily for the benefit of an accused. It can be helpful to reviewing officers if they are uninformed about the case or if an issue not known develops, but principally it affords one charged with a crime an opportunity to learn the strength or weakness of the prosecution's case. It may establish that there is no reasonable probability that he committed the offense. It discloses the testimony of Government witnesses and it allows the accused a chance to prepare his defense before going to trial. Those are the real advantages, and in this instance they are untouched by my holding.

The majority find it significant that accused was acquitted of the charge of rape and regard this as proof that the Staff Judge Advocate failed to evaluate the evidence properly before submitting the advice. From that line of reasoning, I would suppose a Staff Judge Advocate is derelict if he fails to guess right on the outcome of a case even when it is decided solely on credibility of witnesses. That is particularly important in this case as the issues narrowed themselves to one which was known only to the accused and the victim. Every element of rape was conceded excepting the lack of consent. One need only read this record to find trial incidents which might have influenced markedly the unknown factor of which one of the two participating parties was telling the truth. And seldom as it may be, once in a while members of a court-martial in the military may be swayed by imponderables which are not susceptible of being sensed by one who merely has to conclude from a typewritten record that a crime has probably been committed by the accused. Even if humanities do not influence a finding of guilt, the facts necessary to support a recommendation for trial are not weighed by the same scales as those required for a conviction. That alone demolishes the assertion that

one who recommends trial is proven to have made a superficial evaluation by a finding of innocence.

Another reason for reversal is ascribed by the majority to the failure of trial counsel and Colonel Steele, the law officer, to disclose the grounds for challenge which existed as to the latter. I have touched slightly on the facts influencing that claimed error, but I propose to develop them more fully. The Manual refers to both ineligibility and grounds for challenge of the law officer in paragraph 4e at page 4. In pertinent part it reads:

"No person shall be eligible to act as law officer in a case if he is the accuser (Art. 1 (11)) or a witness for the prosecution (63) or has acted as an investigating officer or counsel in the same case (Art. 26a). An officer who has served as a member should not be appointed as law officer for a rehearing (92) or a new trial (109, 110) of the same case. Prior participation in the same case as law officer, staff judge advocate, or legal officer to the convening authority may be a ground for challenge for cause. See 62f."

The last sentence applies to the situation with which we are dealing and it provides only that it *may* be a ground for challenge for cause. The subparagraph referred to, 62f, lists the separate grounds for challenge, and Colonel Steele's prior connection with the case is identified in the 11th category: "That he has acted in the same case as the convening authority or as the legal officer or staff judge advocate to the convening authority." Reading further, subparagraph 62h(2) provides:

"If a member or law officer is challenged for any of the *first eight grounds* enumerated in 62f, and he admits the fact upon which the challenge is based, or if in any case it is manifest that a challenge will be unanimously sustained, the member or law officer will be excused forthwith unless objection or question is made or raised. . . ." [Emphasis supplied.]

Since the conduct is not among the first eight grounds, the Manual writers must not have considered it as a self-operating disqualification. Instead of requiring the law officer's summary dismissal once it is known, they provided that he could continue to act if not challenged or if a challenge was not sustained by the vote of the court. By this system, a law officer or member who has had some prior connection with the case can continue serving provided he does not have an opinion which might be adverse to an accused. The object of the above Manual provisions is to avoid any possible impingement on the disinterested objectivity which is the prime requisite of the law officer and which might result from his having prejudged the case. Although again I mention that an opinion on probability does not show a fixed opinion on guilt, not only does Lt. Colonel Steele assert he did not truly act in the capacity of Staff Judge Advocate, but further he contends that he was unfamiliar with the facts and had no opinion on the merits. The best supporting evidence that he was not unfavorable nor unfairly inclined against the accused is found in the record of trial. Had the facts material to this issue been developed on voir dire of the law officer the court-martial could have properly overruled a challenge for cause.

The majority hold, nevertheless, that the trial counsel's failure to disclose that Colonel Steele signed the pretrial advice deprived the accused of his opportunity to challenge and, therefore, reversal is required. This is true where the defect comes under one of the first eight categories, but if it falls into any of the remaining categories, a different rule applies. The rule in that instance is that reversal is demanded only when prejudice is shown. Here, both counsel were members of the Judge Advocate General section. Both had equal opportunity to discover the alleged error. Defense counsel claims he did not discover the irregularity until after trial. I accept that, but I afford trial counsel the same latitude. There is no showing that he was aware of the claimed disqualification and that he willfully withheld information from defending counsel. Lt. Colonel Steele neither remembered the incident of

signing the advice nor concealed evidence which would lead to discovery of his signature on the letter. For some three weeks defending counsel had in his possession a carbon copy of the advice with Colonel Steele's name typed in capital letters beneath the space for signature, and he was supplied from time to time with the trial counsel's file which contained the signed original. Under these circumstances, it can hardly be contended that the Government is seeking to profit from its own wrong or that trial counsel was remiss in his duties. That showing might not be necessary if the accused had any just complaint about prejudice. But when I return to the core of the majority opinion, I find this unusual result. An accused who had the benefit of one of the most carefully investigated, thoroughly considered, and best tried cases is found not guilty of the most serious offense charged and guilty of two not so serious. He judicially admitted the offense of adultery, but he is granted a rehearing on that offense because of an alleged error which, by any standard, was inconsequential and non-prejudicial. That hardly meets the test of Article 59(*a*) of the Code.