UNITED STATES, Appellee

v

JAMES ROBERTS, Corporal, U. S. Army, Appellant

7 USCMA 322, 22 CMR 112

No. 7738

Decided August 31, 1956

*First Lieutenant Jerome H. Gerber* argued the cause for Appellant, Accused. With him on the brief was *Major Edwin Doran.*

*Captain M. Douglas Hodges* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, Captain Vernon M. Culpepper,* and *Captain Thomas J. Nichols.*

### Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted by general court-martial of desertion resulting from a prolonged absence of approximately eleven years, in violation of the 58th Article of War, 10 USC § 1530. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for fifteen years. The convening authority reduced the confinement to ten years but otherwise approved. Thereafter an Army board of review further reduced the confine-

ment to six years. We granted review to determine whether prejudicial error was committed in referring the charges to trial. Only the facts which touch upon this issue will be related.

After the board of review had acted in this case the convening authority forwarded a letter to the Chief, Defense Appellate Division, office of The Judge Advocate General of the Army, which stated in substance that he had personally delegated to his Staff Judge Advocate authority to refer the case

for trial and that the staff officer and not the commander made the decision. The same information is contained in one of a number of affidavits attached to the pleadings in this case.

A study of certain facts surrounding the reference to trial might prove helpful. On April 25, 1955, Colonel Weddell, who at that time was Commanding Officer of Headquarters Camp Stewart AAA and Tank Training Command, Camp Stewart, Georgia, as convening authority ordered the charges against the accused investigated. A pretrial advice, signed by Colonel Wick as Staff Judge Advocate, was submitted to him on April 26, 1955, and on that date he referred the case to trial by general court-martial. The charges were served on the accused, and on April 30, 1955, he requested a continuance, which was granted. Thereafter Colonel Weddell's original reference to trial was lined out and General Mayo, who was the then Commanding Officer, on two successive occasions ostensibly caused re-referrals of the charges to other courts-martial appointed by him.

At the outset we are met with the contention by the Government that this Court should not consider the appellate exhibits setting forth the purported delegation of power by the convening authority. At various times, cases involving so-called appellate exhibits have been before this Court (United States v Lowry, 4 USCMA 448, 16 CMR 22; United States v Tobita, 3 USCMA 267, 12 CMR 23; United States v Schuller, 5 USCMA 101, 17 CMR 101; United States v Galloway, 2 USCMA 433, 9 CMR 63; United States v Anderten, 4 USCMA 354, 15 CMR 354; United States v Green, 5 USCMA 610, 18 CMR 234; United States v Bunting, 4 USCMA 84, 15 CMR 84; United States v Ferguson, 5 USCMA 68, 17 CMR 68; United States v Lanford, 6 USCMA 371, 20 CMR 87, and United States v Walters, 4 USCMA 617, 16 CMR 191). In connection with appellate exhibits generally, we feel it appropriate to point out that certain distinctions must necessarily be drawn. Where such an exhibit contains new evidence or new matter which was not before or was not considered by the trial court or the reviewing agencies, this Court follows the almost uniform civil practice and generally will not consider it. Ordinarily appellate courts review claimed errors only on the basis of the error as presented to the lower courts, Hovland v Smith, 22 F2d 769 (CA 9th Cir) (1927); however, this Court will review material outside the record having to do with insanity, United States v Bell, 6 USCMA 392, 20 CMR 108, and jurisdiction, United States v Dickenson, 6 USCMA 438, 20 CMR 154.

The other category of appellate exhibits actually amounts to what is usually referred to as a supplementary or additional designation of record. That is, it involves some procedure or occurrence which ordinarily would be included in the record of trial and other proceedings that come before this Court for review but which is missing therefrom by way of mistake, inadvertance, or otherwise. In this latter category the only question involved is whether such occurrence in fact took place. If so, and if pertinent, it is entitled to be made part of the record of the proceedings before this Court. There may of course be circumstances where—when such a correction is made for the first time at this level—we will return the entire record for primary decision at the appropriate level. Nevertheless civil courts generally and the Federal courts in particular provide the necessary measures to insure that a complete and correct record is before the appellate court. See Rule 75(h) of the Federal Rules of Civil Procedure, which also applies to the Federal Rules of Criminal Procedure (Rule 39). This does not mean that we are not fully aware of and in complete accord with the function provided for by a Certificate of Correction (paragraph 86c, Manual for Courts-Martial, United States, 1951). But the use of such certificate appears to be permissive in nature, merely one method of correcting a record, not the exclusive means. United States v Self, 3 USCMA 568, 13 CMR 124.

In the case now before us we may

properly consider the letter and affidavit of the convening authority—the contents of which are not disputed—because, as will be hereafter developed, a question involving jurisdiction is raised. When Article 34 of the Uniform Code of Military Justice was under consideration by the House Committee, the members felt there was some question as to whether the suggested article as then written adequately spelled out that it was the convening authority who necessarily was required to make the decision respecting the referral of charges for trial by a court-martial. In this regard, Mr. Elston asserted:

"That is exactly the point that I was making. The way it reads it would seem that it might be up to the staff judge advocate to make the decision; and I know that is not what you want." [Hearings before House Armed Services Committee, 81st Congress, 1st Session, on H.R. 2498, Uniform Code of Military Justice, page 1007.]

The article was then amended in order to positively show that the action must be that of the convening authority.

In keeping with the legislative intendment, this Court has on at least two occasions unanimously held that the power to refer charges for trial is nondelegable. In Bunting, supra, we declared:

". . . the reference of the charges for trial requires the exercise of a judicial judgment, and consequently the power to refer would be clearly nondelegable." [Page 87.]

Likewise in United States v Williams, 6 USCMA 243, 19 CMR 369, we stated:

"An integral segment of the power to convene is the requirement that, before a commander may refer a charge to a general court-martial for trial, he must determine, following advice from his staff judge advocate, that the charge (1) alleges an offense under military law and (2) is warranted by available evidence. See Article 34(a), 50 USC § 605; United States v Schuller, 5 USCMA 101, 17

CMR 101. An accused person is thus assured that the convening authority himself will examine both the charge and the evidence against him, and will decide whether to refer the case for trial or not to do so, and, in the former instance, will determine the grade of court-martial—summary, special or general—by which it shall be heard."

From the above authorities it is clear that the power to refer charges for trial cannot be delegated. That being so, the next question which requires our attention is if General Mayo did in fact authorize his legal officer to exercise the power to refer, what would be the effect of this delegation of authority on the validity of a court-martial proceeding? Although this question has never been specifically decided by this Court, Judge Latimer, writing informally for the Temple Law Quarterly, equated the military pretrial procedure with the Federal procedure of preliminary examination and grand jury indictment as follows:

". . . Following the investigation, the charges and specifications together with the recommendations of the investigating officer and the commanders in the chain of command, are forwarded to the officer exercising general court-martial jurisdiction over the accused. In the normal situation, this officer is a general or flag officer. This officer must consult with his staff judge advocate (who must be a lawyer), and thereafter he makes his decision as to whether to direct a trial by general court-martial. Thus it may be seen that something roughly analogous to the federal procedure of preliminary examination and grand jury indictment is obtained in the military through the use of a formal pretrial investigation and convening authority consideration." [A Comparative Analysis of Federal and Military Criminal Procedure, 29 Temple Law Quarterly 1, 5.]

We feel that Judge Latimer's analogy is appropriate. Without an indictment a trial on a criminal charge is a nullity. U. S. Constitution, Amendment V;

United States v DeWalt, 128 US 393, 9 S Ct 111, 32 L ed 485. While it is true that cases arising in the land or naval forces are exempted from the grand jury requirements of the Federal Constitution, drafters of the Code saw fit to unequivocally require that persons in the armed forces be tried only on charges referred by the convening authority.

If the staff judge advocate therefore referred this case for trial, reversal is necessary. The Government attempts to avoid such a result by █ advancing the argument that the case was properly referred to trial by the original reference of Colonel Weddell on April 26, 1955, and since the subsequent referrals ˋ were of no force and effect, the court had jurisdiction to try the accused under that prior valid reference. However, when we turn to Colonel Weddell's referral of April 26, 1955, we are confronted with Colonel Wick's affidavit that he caused the case to be referred to trial on that date, pursuant to a delegation of authority from General Mayo. As a consequence the action of Colonel Wick was void. The Government attempts to circumvent that difficulty by offering an affidavit from Colonel Weddell to the effect that he discussed the general nature of the case with the Assistant Staff Judge Advocate, Major Hudson, and for all practical purposes caused the case to be referred to a general court-martial. But the difficulty encountered in such an approach—aside from a determination as to whether such a conversation with the convening authority would adequately serve as a staff judge advocate advice—is that Major Hudson was also the law officer in the case, and thus we are confronted with our holding in United States v Schuller, 5 USCMA 101, 17 CMR 101. In that case the law officer submitted a pretrial advice and a majority of the Court declared "under the Manual, trial counsel and the law officer have an affirmative duty to disclose any ground for challenge which may exist."

In summary, we are here confronted with two affidavits, Colonel Weddell's and Major Hudson's. The latter denies acting as Staff Judge Advocate or making any determination with respect to the disposition of the case. When we search the trial record and Hudson's affidavit we find nothing contained therein which indicates that he had any preconceived notions that the accused probably committed an offense or that he considered he had submitted the pretrial advice. As a result, in response to the trial counsel's question as to whether or not he was aware of any grounds for challenge, he replied honestly, "I believe there are none." However, despite what Major Hudson believed, Colonel Weddell's affidavit at least indicates that he was apparently laboring under the impression that he had received a pretrial advice from Hudson. Moreover, since Colonel Wick's action was void, the conversation between Weddell and Hudson was the only thing remaining which could be considered a pretrial advice. It appears, therefore, that, if we accept the Government's contention, Major Hudson was prohibited from thereafter serving as law officer.

The doctrine of waiver does not here apply because even if Major Hudson acted as Staff Judge Advocate, as the Government contends, the defense counsel was unaware of his disqualification to act as the law officer. There is nothing in the pretrial proceedings or elsewhere which would have put the defense on notice that Major Hudson was the advising officer.

A petition for a new trial was recently received by this Court. However, our disposition of the case eliminates the need of a discussion of the matter contained there. The decision of the board of review is reversed and the findings of guilty and the sentence are set aside. The record is returned to The Judge Advocate General of the Army for a rehearing.

Chief Judge QUINN and Judge LATIMER concur.