UNITED STATES, Appellee

v

RICHARD W. HEANEY, Airman Second Class,
U. S. Air Force, Appellant

9 USCMA 6, 25 CMR 268

*Major George M. Wilson* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ellis L. Gottlieb* and *Lieutenant Colonel R. W. Dech*.

*Lieutenant Colonel James R. Thorn* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John F. Hannigan* and *Lieutenant Colonel Francis P. Murray*.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This 19-year-old Airman was convicted of unauthorized entry with intent to commit an indecent assault upon an Air Force nurse at Dhahran Air Base, Saudi Arabia, and of indecent assault upon the same officer, in violation of Articles 130 and 134, Uniform Code of Military Justice, 10 USC §§ 930, 934, respectively. He contends that two prejudicial errors were committed in the course of the proceedings against him.

First, he maintains that he was prejudiced by the failure of the staff judge advocate to provide the convening authority with a written pretrial advice. The record of proceedings contains an undated and unsigned statement to the effect that the staff judge advocate's advice was given "orally."

Article 34 of the Uniform Code of Military Justice, 10 USC § 834, provides that no charge may be referred to trial by a general court-martial without first being submitted to the staff judge advocate of the convening authority for "consideration and advice." The Code's provision does not prescribe the form or the manner of the advice. However, the Manual for Courts-Martial, United States, 1951, contains two provisions on that matter. Subparagraph *b* of paragraph 35 provides that the advice may be "submitted in such manner and form as the convening authority may direct." The individualized approach is expressly made "subject to the provisions" of the cited paragraph. In subparagraph *c* the Manual directs that the advice "include a written and signed statement" of certain findings by the staff judge advocate. It is clear, therefore, that under the Manual, the Article 34 advice must be both written and signed by the staff judge advocate. The question then is whether a departure from these particulars is error which invalidates the reference of the charges to trial and the trial itself. A number of our cases lead to the conclusion that it does not.

Article 34 is an important pretrial protection accorded to an accused. United States v Greenwalt, 6 USCMA 569, 20 CMR 285; United States v Schuller, 5 USCMA 101, 17 CMR 101. In United States v Roberts, 7 USCMA 322, 22 CMR 112, we considered whether the charges had been properly referred to trial. The record indicated that on April 26, 1955, Colonel Weddell ordered the charges referred to trial. His reference was later lined out and the charges were purportedly referred by General Mayo on two separate occasions. In fact, however, the latter references were made by the staff judge advocate, pursuant to a delegation of authority by General Mayo. The Government argued that the original reference by Colonel Weddell was legal and remained unimpaired by the subsequent improper re-references by the staff judge advocate. To show compliance with Article 34, the Government contended that Colonel Weddell had received an oral advice from Major Hudson. Significantly, we did not sum-

marily reject the Government's reliance upon the oral advice. Rather, we followed the argument to its conclusion, and pointed out that since Major Hudson subsequently acted at the trial as law officer without disclosing his earlier connection with the case, error was nonetheless present. The point of emphasis in the opinion was not the form of the advice but the fact that an advice was actually given. See also United States v Bayhand, 6 USCMA 762, 21 CMR 84.

In United States v Allen, 5 USCMA 626, 18 CMR 250, the charges were referred to trial on May 5, 1954, but the pretrial advice was dated May 6. On appeal to this Court, the accused contended that he had been prejudiced by the submission of the advice after the order of reference. Judge Brosman, writing for the Court, held that the accused had waived the defect in the pretrial proceedings. In part he said:

". . . Indeed the sound core of reason behind one aspect of the notion of waiver is peculiarly apparent here—for it is quite possible that, had the objection been raised at trial level, the Government might have been able to show either that the written advice was misdated and had in fact preceded the order referring the charges, *or that the staff judge advocate had verbally and in detail advised the convening authority before the charges had been referred.*" [Emphasis supplied.]

With considerable force the accused argues that if the advice is oral, a reviewing authority will be unable to determine whether it is correct. United States v Greenwalt, supra. The argument has merit. But the accused cannot wait until he has been convicted to test the correctness of the advice. The Manual for Courts-Martial, United States, 1951, authorizes him to examine the advice in preparation for his defense. Paragraphs 35c, 44h, pages 50, 65. It also directs that if he has any objection to the advice he must move for appropriate relief before entry of his plea or he waives any purported defect. *Ibid*, paragraph 69c, page 106.

If he fails to act seasonably, he cannot complain for the first time on appeal that the advice is oral and unsigned, when it should be written and signed. United States v Allen, supra.

The accused's second claim of error concerns the correctness of the law officer's ruling admitting into evidence a pretrial statement made by him to an agent of the Office of Special Investigations. Although defense counsel cross-examined the agent on the circumstances under which the statement was obtained, he affirmatively noted that he had "no objection" to the admission of the statement into evidence. Ordinarily, such action at the trial level, precludes the accused from raising, for the first time on appeal, an objection to the admissibility of the statement. United States v Fisher, 4 USCMA 152, 15 CMR 152. The accused contends that to apply the rule of waiver to him would result in a manifest miscarriage of justice since there is no other evidence of his connection with the crimes. However, even considered on the merits, the claim of error is unjustified.

The basis of the accused's argument is that, as required by Article 31 of the Uniform Code, 10 USC § 831, he was not advised that he did not have to make any statement regarding the offenses of which he was suspected. It appears that several hours after the attack upon the victim in her quarters, the agent interrogated the accused. He testified that he informed the accused at the beginning of his interview that he was a suspect in an investigation into an attempted rape and an assault that "occurred in BOQ 20" at the Base. He read Article 31 to the accused and "advised the accused of his rights under Article 31" and was, in turn, informed by the accused that "he understood his rights as set forth under the 31st Article." The claim of inadequacy of warning is predicated upon the following question and answer in the agent's direct examination:

"Q. And what actually did you tell him when you gave him the advice?

"A. I told him, in addition to reading it, I told him he did not have to

8

make any statement or answer any questions if he felt it might incriminate him or get him in trouble, and that if he did answer any questions I put to him, make any statement, they could be used as evidence against him in a trial.

"TC: All right. At this time I will give the defense an opportunity to examine this witness, if he so desires, before I embark on the actual interrogation of the accused."

Defense counsel cross-examined the agent but nothing of importance to the issue was elicited. On redirect, the agent testified that the accused denied that he had committed the offenses.[1] The examination was concluded in about two hours. Approximately ten and a half hours later it was reopened. The agent "again advised him [the accused] of his rights under Article 31" and informed him of the nature of the investigation. Once more the accused "indicated that he understood his rights" and he "continued to deny that he had committed" the offenses. When the interrogation had been in progress for a short period of time, it was "very possible" that the accused raised the question of whether it might benefit him to give the agent a statement. He told the agent that "he thought he should make" a statement. He then made an oral statement which was reduced to writing and signed by him. The text is prefaced by a statement regarding the advice which he received from the agent. In part, the prefatory matter reads as follows: "and advised me that I did not have to make any statement regarding this offense."

At the outset there is a substantial question as to whether the two interrogations are sufficiently separate to justify separate consideration. An erroneous advice in the first would not necessarily vitiate a correct advice in the second which took place more than ten hours later. See United States v Spero, 8 USCMA 110, 23 CMR 334. Appellate defense counsel does not reach this question. For the purposes of the case at bar, we may disregard it and treat the two interrogations as one.

In United States v Williams, 2 USCMA 430, 9 CMR 60, relied upon by the accused, we held that the agent had misinformed the accused concerning his right to make no statement regarding the offense of which he was accused. The evidence established that the agent told the accused, after he had "constantly declined" to make a statement, that under Article 31 he had no right not to answer the questions put to him. He informed the accused that he "was obligated, as a member of the military service," to answer all "questions which would aid the solution of the crime and clarify the investigation" unless his answers tended to incriminate or degrade him. Accordingly, we concluded that the agent "deliberately and intentionally informed the accused that he did not have a right to refuse to make any statement regarding the offense" and that such advice was "in explicit violation" of Article 31. *Ibid*, pages 432, 433. We have an entirely different situation here. The accused was not informed, as a means of overcoming his initial refusal to speak, that he was required to answer all questions except those which might tend to incriminate or degrade him. He was not told, as was the accused in the *Williams* case, that since he denied complicity in the offenses, he had "no grounds for not answering the questions." On the contrary, the accused was free to exercise his privilege of silence. He was specifically advised that if he answered "*any* questions . . . put to him" or made "*any* statement," the answers or statement could be used against him. On two separate occasions the accused indicated that he understood his rights. He further denied that he had committed the offenses, until finally he decided that he "should make" a statement for whatever advantage might accrue to him. From these facts, the law officer could reasonably conclude that the accused was properly advised, and that he fully understood his right

[1] The law officer ruled that the accused's denial was hearsay and not admissible but he did not order the testimony stricken from the record. United States v Harvey, 8 USCMA 538, 25 CMR 42.

to make no statement regarding the offenses of which he was accused.

The decision of the board of review is affirmed.

Judges LATIMER and FERGUSON concur.