UNITED STATES, Appellant

v

DAVID J. THORNTON, Second Lieutenant, U. S. Army, Appellee

8 USCMA 446, 24 CMR 256

447

No. 9270

Decided December 13, 1957

 

*First Lieutenant Peter J. Hughes* argued the cause for Appellant, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton*.

*First Lieutenant Gene E. Overbeck* argued the cause for Appellee, Accused. With him on the brief were *Colonel J. M. Pitzer* and *Major Frank C. Stetson*.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted of larceny and five specifications alleging the making of separate false official statements. The findings of guilty were affirmed by a board of review, but a rehearing was ordered on the sentence on the ground that the accused was prejudiced by the admission of certain evidence. The Judge Advocate General of the Army has asked us to review the correctness of the board of review's action.

In the Fall of 1955, the accused was assigned as officer-in-charge of the post craft shop, Fort Rucker, Alabama. His duties included the submission of a monthly report showing the overtime hours worked by the enlisted personnel, who were paid for the extra service. Starting in October 1955, and in the succeeding months, the accused reported a number of overtime hours for certain enlisted employees which exceeded that actually worked. In due course, these enlisted men received payment on the overstated amounts. The overage in payment was turned over to the accused. When this situation came to light, the accused readily admitted the inflated statements and the receipt from the enlisted personnel of the extra compensation. He maintained, however, that the form of operation had been suggested and specifically approved by Major Knight, his superior officer, as a proper means of obtaining compensation for the overtime hours he himself worked at the shop; the plan, in fact, had been adopted to avoid the reach of regulations prohibiting compensation to officers for work performed past the normal duty hours.

At the trial, the accused's admission, in the form of a written statement, was introduced into evidence by the Government. In addition, over defense objection, the prosecution introduced testimony to the effect that in October 1955, the accused requested a civilian contractor who supplied some equipment to the craft shop to bill the Army at the list price and to remit the normal Army discount to him personally. The board of review held that the admission of this evidence was error, but that the error prejudiced the accused only in regard to the sentence. It is this determination which The Judge Advocate General of the Army has asked us to review.

Before we could reach the admissibility question, there was a matter of importance considered by the board of review which required our attention, even though it was not within the issues certified by The Judge Advocate General. We ordered the parties to file supplemental briefs, and we heard arguments on this issue which is:

448

"Whether the accused was entitled to the issuance of a subpoena to have a witness appear in person at the trial."

Shortly before the trial, defense counsel submitted a written request to the convening authority for the subpoena of a former officer, Kenneth Wohlpart, who had been the accused's predecessor in charge of the craft shop. The witness resided in New York. It was alleged by the accused the witness would testify that while on duty he had engaged in a conversation with the accused and Major Knight in regard to the operation of the shop, and that the Major suggested the accused could receive pay for his extra work by adopting the plan used here. It does not appear whether the convening authority personally acted on the request. It was, however, denied by the Acting Staff Judge Advocate. The accused renewed the request at the trial. It was also denied by the law officer. Thereupon, the defense counsel and the prosecution entered into a stipulation as to the testimony that would have been given by the witness.

In reviewing the case, the board of review held that the "major factual issue" was the accused's explanation of his actions. Nevertheless, it concluded that the witness' testimony was immaterial. On that point we reach a different conclusion. Under the evidence, the court-martial could have found that the accused honestly believed he was entitled to be paid for the services he performed in accordance with the adopted plan, or, in the alternative, that he was honestly mistaken about his commanding officer's authority to authorize the plan for payment of compensation. If the court-martial so found, it would have been duty-bound to acquit the accused of larceny because of the absence of the required criminal intent. As a matter of fact, the intent of the accused was the only crucial issue in the case, since the accused admitted overstating the hours and receiving the compensation paid for the overage. Consequently, if the accused was entitled to the direct testimony of this witness, it was prejudicial error to deny

him a subpoena for the witness' appearance.

An accused cannot be forced to present the testimony of a material witness on his behalf by way of stipulation or deposition. On the contrary, he is entitled to have the witness testify directly from the witness stand in the courtroom. To insure that right, Congress has provided that he "shall have equal opportunity [with the prosecution and court-martial] to obtain witnesses . . . in accordance with such regulations as the President may prescribe." Article 46, Uniform Code of Military Justice, 10 USC § 846.

Pursuant to the Uniform Code the President has directed that trial counsel "will take timely and appropriate action" to subpoena witnesses requested by the defense. Manual for Courts-Martial, United States, 1951, paragraph 115a. No right is given to trial counsel to refuse a request, except in case of disagreement with defense counsel "as to whether the testimony of a witness so requested would be necessary." In the event of such disagreement, the matter must be "referred for decision to the convening authority or to the court, according to whether the question arises before or after the court convenes." The record of the proceedings shows that the request was submitted to the convening authority.

The defense request was denied by the Acting Staff Judge Advocate, without any apparent concurrence by the convening authority. If that were the fact, it would clearly be error. However, in this case (Cf. United States v Schuller, 5 USCMA 101, 17 CMR 101), whether or not the decision was made by the convening authority need not detain us. The request was renewed at the trial and denied by the law officer. The ruling concerns a substantial right of the accused, and it is reviewable by this Court as part of the record to determine whether there was an abuse of discretion. See Meeks v United States, 179 F2d 319 (CA 9th Cir) (1950).

We have already pointed out that the

**449**

testimony sought to be elicited from the witness goes to the core of the accused's defense. It supports his explanation of his conduct, which constitutes a denial of the specific intent necessary to support a finding of larceny. It was both material and necessary. Cf. United States v DeAngelis, 3 USCMA 298, 12 CMR 54. Accordingly, we conclude that the denial of the accused's request for a subpoena was prejudicial.

In view of our conclusion as to the accused's right to the personal testimony of his witness, we need not consider the evidentiary issue raised by the certificate. That question may not arise on a retrial of the case. The decision of the board of review is reversed. The findings of guilty and the sentence are set aside, and the record of trial is returned to The Judge Advocate General of the Army. A rehearing may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

Because I believe the consequences of this decision may be of far-reaching importance and have a substantial impact upon the trial of future cases in military courts, I set forth the views prompting me to dissent. There are two principal areas of disagreement between my associates and myself: First, the law officer, in my opinion, did not abuse his discretion in denying the motion to subpoena a witness. Second, the questions certified should not go unanswered, for although my associates say the question may not arise at a rehearing, I respectfully disagree. A rehearing has been authorized and most certainly if the evidence is material, competent, and relevant, the Government is entitled to have it introduced at the retrial. We should not therefore brush aside the issue only to be faced with it on another appeal.

I offer the following reasons for affirming the judgment. Some three days before trial, defense counsel forwarded to the convening authority a written request for a continuance, and for the subpoena of a civilian witness. Trial counsel opposed the request and assigned his reason therefor. While the correspondence does not show the convening authority acted personally, in view of the nature of the relief given and that refused, the presumption of regularity, and the rank of the acting staff judge advocate, I am reasonably certain he did not act on his own responsibility. However, that matter is of no consequence, for the same request was directed to the court-martial after trial of the case commenced and the ruling was made there. Accordingly, if this ruling on the latter request was proper, the prior action is nonprejudicial.

It appears to me that in reversing a case because of the Government's refusal to transport a witness some 1200 miles, my associates not only override the provisions of the Uniform Code of Military Justice and the Manual for Courts-Martial, but they give no consideration to the fact that a proper showing was not made by an accused. Article 46 of the Code, 10 USC § 846, provides as follows:

"The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe. Process issued in court-martial cases to compel witnesses to appear and testify and to compel the production of other evidence shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue and shall run to any part of the United States, or the Territories, Commonwealths, and possessions."

It is true that this Article gives trial counsel, defense counsel, and the court-martial equal opportunity to obtain witnesses. However, the privilege is bottomed upon such regulations as the President may prescribe. I believe that delegation of authority to the President permits him some discretion in prescribing rules governing the issuance of subpoenas and in that regard he has stated that trial counsel may consent to

admit the facts expected from the testimony of the witness and an application for subpoena may be withdrawn if trial counsel and defense counsel enter into a stipulation as to the testimony of such a witness. Paragraph 115a, Manual for Courts-Martial, United States, 1951, page 189. Here trial counsel agreed to stipulate the expected testimony of the witness and when a motion to subpoena was denied, the accused was offered a continuance to take a deposition but his counsel preferred to proceed and the evidence was presented in that manner. It may well be that in a case where credibility of witnesses is a material factor in ascertaining the truth of disputed testimony, stipulated evidence might not suffice to assure an accused a fair trial, but in this case that contingency is not present and other cogent reasons support the denial of the motion.

I have no disposition to deny an accused the right to have witnesses appear personally at the trial of his offense. Particularly is that true when the Government has live testimony on a material issue and the accused seeks to present opposing testimony. However, before being entitled to the right or privilege, I believe it is incumbent upon him to make a substantial showing of the necessity. In Article 46 Congress indicated that the procedure used in civilian Federal courts should be a guide in military tribunals and I would follow generally those rules. The Federal Rules of Criminal Procedure prescribe for the attendance of witnesses in Federal civilian courts and a judge or court may order a subpoena issued for a defendant. In the military, that decision is made by the convening authority prior to trial, or the law officer or the court-martial after the trial has commenced. In the civilian system, if a defendant desires a subpoena issued with the Government required to pay the expenses of the witness, he must support the request with an affidavit showing certain conditions. Paragraph (b) of Rule 17 provides:

"Indigent Defendants. The court or a judge thereof may order at any time that a subpoena be issued upon motion or request of an indigent defendant. The motion or request shall be supported by affidavit in which the defendant shall state the name and address of each witness and the testimony which he is expected by the defendant to give if subpoenaed, and shall show that the evidence of the witness is material to the defense, that the defendant cannot safely go to trial without the witness and that the defendant does not have sufficient means and is actually unable to pay the fees of the witness."

While the Manual for Courts-Martial, United States, 1951, makes no mention of inability to pay, it does require that defense counsel submit a statement in writing containing (1) a synopsis of the testimony that it is expected the witness will give, (2) full reasons which necessitate the personal appearance of the witness, and (3) any other matter showing that such expected testimony is necessary to the ends of justice. I believe that the materiality required by the Federal rule is encompassed within the Manual requirements and in the case at bar the statement by counsel fails to establish that requirement.

A review of the Federal civilian cases discloses that a judge has wide latitude in granting or denying the motion of an indigent defendant to subpoena a witness and I would apply that principle in military law. Under our system, the convening authority, the law officer, or the court should be permitted to exercise discretion in granting or denying the motion. If we use that principle as our yardstick, we should not overturn the ruling in this instance, for the record shows affirmatively that the testimony of the witness sought to be subpoenaed would have been immaterial. The offer of proof supporting the motion—and parenthetically I might add that defense counsel in all probability stated his expected testimony in the most favorable way to his client—was that if called to testify the witness would say that he overheard a conversation in which a Major Knight suggested that accused could receive pay for overtime work by adding his overtime hours to those of the enlisted men

and then collect the excess from them. Assuming every word of █ that testimony to be true, I fail to see the materiality of that evidence to any issue in this case. The accused was charged with larceny and the giving of false official statements. He knew it was contrary to law for officers to draw overtime pay for their services and anyone with intelligence enough to be an officer knows that padding a payroll is illegal. In addition, when he was seeking the aid of the enlisted men, he informed them that the scheme was being adopted because he was not authorized to be paid for his services. He produced no evidence which remotely suggests that he believed the Major had the authority to overrule regulations and legalize his activities, and his pretrial statement contains no information to that effect. I therefore say, what matters it that a senior officer suggests larceny and the making of false official statements, if the junior knows that by following the advice he will commit offenses against the Government? How can there be a mistake of fact unless the accused honestly believed the Major had the authority to change the law? True, he made a mistake, but it was in taking the money, not in honestly believing he had the right to do so. If, as the record shows, the accused knew he was padding a payroll and making false official statements, the testimony of the desired witness would have no tendency to establish that the taking was under a claim of right. It might tend to prove many things, including these: that the Major had no concern for the property of the Government; that he was in pari delicto with the accused; or that he cared not whether the accused assumed the risk of committing the offense. But I am at a loss to understand how that evidence could reach the dignity of any legal defense for this accused. Unless it does, the testimony is immaterial and the failure to produce the witness is not error. While my associates say the evidence goes to the core of accused's defense because it negates specific intent to deprive the Government of its property, I conclude otherwise. As I consider the proposed testimony, it merely raises doubt about the number of individuals who may have had knowledge of the fraud.

Having so concluded, I move on to consider the following issues certified for our determination:

"(1) Was the board of review correct in holding that evidence of other misconduct was inadmissible on the merits?

"(2) If the first certified question is answered in the affirmative was the board of review correct in holding that evidence of other misconduct prejudiced the accused with respect to the sentence?"

The accused, while assigned as officer in charge of the post craft shop at Fort Rucker, Alabama, adopted the following scheme to increase his income. Beginning with the month of October 1955, and through the ensuing months until his activities were discovered, he overstated the number of overtime hours worked by certain enlisted employees. The padded monthly work sheets prepared by him were turned in through regular channels, and payroll checks drawn on the Post Central Fund and based on the false statements were issued to the enlisted men. When they received payment, the unearned compensation was turned over to the accused for his use. Five of the monthly reports were the basis for the false official statement counts against the accused and the money converted by these manipulations gave rise to the larceny charge against him.

Accused's pretrial statement insofar as relevant to this issue was as follows:

"About the last of September 1955, I relieved a Lt Wohlpart at the Special Service Craft Shop. Just before taking over I got together with my superior Major Knight the Post Assistant Special Service Officer to figure what part time help would be needed to sufficiently operate the Craft Shop during after duty hours. At this time I suggested to the Major that the shop might operate more efficiently if I were there during these off duty hours. Major Knight explained to me at that time that there

452

was some regulation that I could not officially be paid but that he agreed it would help matters if I did work there during after duty hours. He also told me that time that I could ask the enlisted men if it was all right with them to include my over time with thires [sic] and they could draw the money and reimburse me. I contacted all of the enlisted men that worked there and they all agreed to reimburse me out of their checks for the overtime that I worked."

This statement, along with other evidence of the illegal method of operation, was introduced by the Government at the trial. In addition, trial counsel introduced evidence which tended to establish that during October 1955, the accused, in arranging a purchase of equipment for the craft shop from a civilian contractor, requested that the Army be billed at list price, and that the discount allowed the Army be given to him in cash. The difference between the net price and list price was $69.50, and the contractor complied with the request, holding that sum for payment to the accused. Defense counsel objected to the introduction of this testimony on the grounds that it was evidence of other acts of misconduct by the accused, and not relevant or competent to establish the offense in question. He argued that it tended only to show a larcenous disposition on the part of the accused and blackened his .character without justification. The law officer overruled the objection, but upon appeal a board of review held the ruling to be erroneous. However, the board determined that the error did not prejudice the accused with respect to the findings but that it prejudicially affected the sentence. Accordingly, a rehearing upon the sentence only was directed. Thereafter, the correctness of the board's holding was certified to this Court for review.

In approaching this problem, I start with the general rule to the effect that evidence of the commission of other offenses or acts of misconduct by an accused is not normally admissible. Absent other factors, such evidence is objectionable because of the danger that the accused might be improperly convicted on the basis of an inference of guilt drawn from a criminal disposition, rather than from the evidence touching upon the offense charged. However, where such evidence has probative value other than merely to show accused's criminal propensities, the reason for the exclusion fails and the general rule no longer applies.

A perusal of the pertinent provisions of the Manual and the past decisions of this Court demonstrate the firmness of this position. Paragraph 138*g*, Manual for Courts-Martial, United States, 1951, page 244, after setting forth the general rule, lists certain well-recognized exceptions thereto as follows:

". . . evidence of other offenses or acts of misconduct of the accused is admissible in the following circumstances:

(1) When it tends to identify the accused as the perpetrator of the offense charged.

(2) When it tends to prove a plan or design of the accused.

(3) When it ends to prove guilty knowledge or intent, if guilty knowledge or intent is an element of the offense charged.

(4) When it tends to prove motive.

(5) When it tends to refute a claim, express or implicit, made by the accused that his participation in the offense charged was the result of accident or mistake."

In United States v Pavoni, 5 USCMA 591, 18 CMR 215, we listed our previous holdings wherein we had approved the above and similar exceptions to the rule. In that instance we noted, at page 594:

"All of these exceptions to the general rule of exclusion may be covered by stating the rule in the negative; that is, relevant and competent evidence of guilt is not rendered inadmissible because it also proves that the accused committed another offense. United States v Haimson, 5 USCMA 208, 17 CMR 208; Coulston

v United States, 51 F2d 178, 181 (CA10th Cir 1931)."

From the foregoing, it may be ascertained that the answer to the first certified issue depends upon whether the questioned evidence falls within one of the exceptions enumerated above. I conclude that it does and, therefore, that the board of review's holding—which was tantamount to a determination that as a matter of law it did not—was in error.

One charge against accused was for larceny, a crime which requires the presence of a specific intent. That is to say that in order to support a conviction for larceny, the court must find, inter alia, that the accused wrongfully obtained the money with the intent permanently to deprive the Central Post Fund of its use and benefit. The necessary criminal intent is lacking when one obtains possession of property under an honest claim of right, and consequently it is not larceny if an accused mistakenly but honestly believes he is operating within his rights. United States v Smith, 2 USCMA 312, 8 CMR 112; 32 Am Jur, Larceny, § 41; 52 CJS, Larceny, § 26.

In the instant case, there is no question but what accused received the money. The sole issue, therefore, was one of intent. In that connection, I cannot ignore the fact that the accused in his pretrial statement and particularly in his defense sought to exculpate himself by shifting responsibility to his immediate commander. Unquestionably, had his contention raised a reasonable doubt in the minds of the court members about his criminal intent, they might have found him not guilty of the larceny. We have previously held that the exculpatory portions of pretrial statements by an accused, if not inherently unworthy of belief, are sufficient to raise an issue, notwithstanding that such statements are introduced by the prosecution. United States v Johnson, 3 USCMA 209, 11 CMR 209. But more important in this instance is the fact that accused pleaded not guilty and founded his defense and arguments on an asserted mistake of fact and it must, therefore, be reasonably clear that he intended to raise his criminal intent as a contested issue. Even though the assertion of good faith was contested by the Government, the defense advanced its theory and the Government can meet a proposed theory even though in the end it is not established. Thus, I cannot agree with the board of review that his intent was established and that evidence to prove it was cumulative.

When considered in its proper perspective, the principal evidence presented by the prosecution tended to show an illegal method of operation by the accused, which resulted in an unlawful financial gain to him. Of the two defenses asserted by him, I first consider his theory that the money was obtained under an honest belief that he was entitled to the funds as payment for services performed. Any testimony which would reasonably refute that defense would be competent and relevant. The alleged misconduct with the equipment dealer was carried on during the period the payrolls were being fabricated, and accused was enabled to carry out both schemes by reason of his position of trust. In addition, it is interesting to note the similarity in the modus operandi of the two plans: In one the accused turned in a falsified payroll, thereby making it possible for certain enlisted employees to obtain money not due them which was paid to him; in the other he procured an inflated invoice to be submitted to the Department of the Army with an understanding that the overpayment would be given to him. The testimony concerning the latter offense casts grave doubt on accused's defense that he had no intent to defraud the Government, and it weakens immeasurably the base for his assertion that his plan with the employees was only to obtain those funds which were justly due him.

In Thorp v People, 110 Colo 7, 129 P2d 296, the Supreme Court of Colorado was faced with a somewhat similar problem. There the defendant was employed in a fiduciary capacity, and she was charged with embezzling the proceeds of a check given to the company

in payment of an account. Her explanation of the conversion was this: That she had not intended to appropriate the money at all; that her employer considered the drawer a poor risk; that he had directed her not to accept his checks; that she had deposited the check in her account only to protect her employer in case of dishonor; and that she intended to pay him the money in cash as soon as the check cleared. Her story in justification was denied by her employer, and the judge, over defense objections, admitted evidence that she had paid a personal garage bill, received professional service, and bought a fur by giving the merchants credit on their respective accounts with the employer. Further, the prosecution was permitted to show that she had converted checks from a railroad company in a manner similar to the method used in this instance. The court held:

> "There was no prejudicial error committed in the admission of the testimony concerning defendant's deals with Newman, Hopper, Mossman, and the railroad company. All of it was properly admitted to show a deliberate intent and scheme to defraud the company. Her conduct in these affairs, while not subjecting her necessarily to the exact crime of embezzlement, was nevertheless of the same general character; i. e., using assets of the company to her own financial advantage, so as not to offend the exclusion rule."

I believe that the same reasoning can be applied in the instant case and that the questioned evidence was competent to establish the accused's intent to deprive the Government permanently of its property. The court members were instructed to consider the evidence only as it tended to cast light on accused's intent, hence the questioned testimony was before the court with proper limitation.

There is yet an additional basis upon which the disputed testimony was admissible. As previously mentioned, the accused not only claimed he was entitled to the money for service performed, but also that his activities had been authorized by his superior officer. To state his position somewhat differently, he sought to raise the issue that he had engaged in the manipulations of the payroll only upon the mistaken belief that Major Knight's approval made such activity legitimate. He relied on this contention from beginning to end, and the record shows a colloquy between defense counsel and the law officer on the giving of an instruction on mistake of fact or law. I need not decide whether he sought to defend on a mistake of fact or one of law for the same rule governing other acts of misconduct applies. The questioned evidence showed that the accused was concurrently engaged in misconduct other than his dealings with enlisted men whereby he used his position of trust in an attempt to steal from the Government in a fashion closely identified with the method used in the alleged offense. As to the transaction with the merchant, the accused could not conceivably have entertained a mistaken belief that his activity was authorized. It is one thing for an accused to assert that he believed nothing to be wrong, but it is quite another to attempt to sustain that contention when it is shown that he participated in another similar dishonest transaction at about the same time which was unknown to any superior. Clearly, the evidence served to refute any claim that accused's participation in the offense was the result of an innocent mistake. Such being the case, it was admissible under the exception previously mentioned, namely, evidence of other misconduct is admissible when it tends to refute a claim made by the accused that his participation in the offense charged was the result of a mistake.

For the foregoing reasons, I would answer the first certified question in the negative. That response disposes of any necessity to answer the second question for, if the evidence was admissible as part of the case in chief, it was admissible for the subsequent proceedings.