UNITED STATES, Appellee

v

L. C. HARVEY, Private E-1, U. S. Army, Appellant

8 USCMA 538, 25 CMR 42

No. 9768

Decided December 27, 1957

*First Lieutenant Gene E. Overbeck* argued the cause for Appellant, Accused. With him on the brief was *Major Frank C. Stetson.*

*First Lieutenant James G. Duffy* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *Major Thomas J. Nichols.*

## Opinion of the Court

HOMER FERGUSON, Judge:

We granted review in this case to consider certain rulings by the law officer relating to procedural and evidentiary matters. The accused stands convicted of having assaulted one

Rudolph Ryan by shooting him in the arm with a pistol, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. The facts developed at trial briefly stated are these: On the evening of November 18, 1956, the accused went to a service station, operated by Ryan in Austin, Texas. It appears that there had been previous business dealings between Ryan and the accused, which had been unsatisfactorily concluded, and which had resulted in ill feelings on both sides. Upon arriving at the station, the accused found Ryan and a helper, named Crayton, working under the hood of an automobile. The accused approached the opposite side of the automobile and asked Ryan for something. The latter was overheard to remark, " 'No,' or something like that." The accused then proceeded to walk around the front of the automobile to the side on which Ryan was working. He struck Ryan upon the head and, when the latter whirled around, the accused shot him in the arm and ran away.

On the day following the assault, a criminal investigator for the Austin Police Department interrogated the accused at police headquarters. No military investigators were present during this interrogation. The accused was advised, however, pursuant to the "State of Texas statutory warning that he didn't have to make any statement to us and if any statement was made to us it would be used as evidence against him on his trial." Without "threats or rewards or promises of benefit" the accused made an oral statement to the investigator. He stated that he had borrowed the pistol from a friend and had gone to see Ryan concerning an overcoat that he had left in his car on a previous occasion when Ryan had done some repair work. When he started talking to Ryan, he "became a little bit irritated" and hit him over the head with the butt of the pistol. When the latter came out from under the hood of the car, the accused noticed a wrench in his hand and shot him. He knew that he had hit Ryan because "he saw him grab at himself." He then ran back to his car and drove off to Temple, Texas. Ryan was not called as a prose-

cution witness. The accused elected not to testify in his own behalf.

## I

The first issue raised concerns the refusal of the convening authority and the law officer to subpoena requested defense witnesses. Before entering a plea, the accused's individual civilian defense counsel requested a continuance in order that the attendance of certain defense witnesses could be secured. An out-of-court conference was called for the purpose of ruling on this motion. It was established that several days prior to trial, defense counsel had requested trial counsel to subpoena four civilian witnesses residing in and about Austin, Texas. The record of trial is silent as to whether the request was in writing as required by paragraph 115a, Manual for Courts-Martial, United States, 1951. Trial counsel had brought the matter to the convening authority's attention and had advised him that after examining the files of both the Austin Police Department and the Criminal Investigation Detachment he had been unable to find any reference to the requested defense witnesses. He further testified that he had informed defense counsel "that unless he could show some connection between the witnesses that he had requested in the case, that is, that their testimony would be either relevant or material to the case that the convening authority had decided not to subpoena them." Trial counsel reiterated that the Government was still willing to subpoena those witnesses "if some showing can be made that their testimony would be competent in this case." Defense counsel then stated that most of the requested witnesses were prepared to testify to the "character and reputation of the chief prosecution witness," and inasmuch as the issue of self-defense would be raised by the accused, it was relevant to show that the alleged victim of the assault "had a violent character and that such character was known to the accused." The law officer then inquired of trial counsel if it were possible to consult with defense counsel and "stipulate to what these witnesses would be expected to testify to." A recess was called to

permit opposing counsel to confer with the view to arriving at a stipulation of expected testimony. When court reconvened, trial counsel informed the law officer that the Government was prepared to stipulate to the testimony of the witnesses "subject only to the admissibility of the evidence." The law officer thereupon denied the motion for continuance. At this point defense counsel objected to the necessity of presenting evidence by stipulation rather than by the personal appearance in court of the witnesses. The law officer overruled the objection. No stipulation was proffered.

The accused contends that the refusal of the convening authority to subpoena the requested defense witnesses constituted prejudicial error. He relies on the provisions of Article 46, Uniform Code of Military Justice, 10 USC § 846, which provides that trial counsel, defense counsel, and the court-martial "shall have equal opportunity to obtain witnesses and other evidence." The Government, on the other hand, takes the position that inasmuch as trial counsel was prepared to enter into a stipulation of the expected testimony of the witnesses and in the absence of a showing that such a stipulation would be an inadequate substitute for the personal appearance of the witnesses, the law officer ruled correctly in not requiring the trial counsel to issue compulsory process.

We recently had occasion to consider an analogous problem in United States v Thornton, 8 USCMA 446, ■ 24 CMR 256. There, the accused officer was convicted *inter alia* of the offense of larceny. The evidence showed that he had been assigned as officer in charge of the post craft shop. While serving in that capacity, he employed a scheme whereby he would report a number of overtime hours for enlisted employees—who were paid for extra service—which exceeded that actually worked. The enlisted men would receive payment on the overstated amounts and the overage was then turned over to the accused. Prior to trial, the defense counsel had submitted a written request to the convening authority for the subpoena of a

former officer who had been the accused's predecessor in the craft shop. It was alleged that the requested witness would testify that while on duty it had been suggested to him by the accused's commanding officer that he could receive compensation for his extra work by adopting the plan subsequently used by the accused. There was no evidence that the convening authority personally acted on the request; however, it was denied by the acting staff judge advocate. At trial, the accused—who defended on the grounds that he was honestly mistaken as to his authority to utilize the plan for payment of compensation—renewed his request for the presence of the witness, which was denied by the law officer. Thereupon, opposing counsel joined in a stipulation as to the testimony which would have been given had the witness been present in court. In holding that the denial of the accused's request for subpoena of the witness was prejudicial, we said:

"An accused cannot be forced to present the testimony of a material witness on his behalf by way of stipulation or deposition. On the contrary, he is entitled to have the witness testify directly from the witness stand in the courtroom. To insure that right, Congress has provided that he 'shall have equal opportunity [with the prosecution and court-martial] to obtain witnesses . . . in accordance with such regulations as the President may prescribe.' Article 46, Uniform Code of Military Justice, 10 USC § 846.

"Pursuant to the Uniform Code the President has directed that trial counsel 'will take timely and appropriate action' to subpoena witnesses requested by the defense. Manual for Courts-Martial, United States, 1951, paragraph 115a. No right is given to trial counsel to refuse a request, except in case of disagreement with defense counsel 'as to whether the testimony of a witness so requested would be necessary.' In the event of such disagreement, the matter must be 'referred for decision to the convening authority or to the court, according to whether the question arises before or after the court con-

venes.' The record of the proceedings shows that the request was submitted to the convening authority.

"The defense request was denied by the Acting Staff Judge Advocate, without any apparent concurrence by the convening authority. If that were the fact, it would clearly be error. However, in this case (Cf. United States v Schuller, 5 USCMA 101, 7 CMR 101), whether or not the decision was made by the convening authority need not detain us. The request was renewed at the trial and denied by the law officer. The ruling concerns a substantial right of the accused, and it is reviewable by this Court as part of the record to determine whether there was an abuse of discretion. See Meeks v United States, 179 F2d 319 (CA 9th Cir) (1950).

"We have already pointed out that the testimony sought to be elicited from the witness goes to the core of the accused's defense. It supports his explanation of his conduct, which constitutes a denial of the specific intent necessary to support a finding of larceny. It was both material and necessary. Cf. United States v DeAngelis, 3 USCMA 298, 12 CMR 54. Accordingly, we conclude that the denial of the accused's request for a subpoena was prejudicial."

Several critical distinctions exist between the case at bar and the Thornton case, supra. First, and most important, is that the expected testimony of the witness in *Thornton* went to "the core of the accused's defense," whereas here, the expected testimony of the defense witness related to the victim's turbulent character and addiction to violence. The admissibility of such testimony would depend upon whether the accused presented evidence raising the issue of self-defense. Secondly, in the Thornton case, it was the acting staff judge advocate who denied the request for subpoena, whereas here, it was the convening authority. We believe these distinctions control the present situation.

In United States v DeAngelis, 3 USCMA 298, 12 CMR 54, this Court held that before compulsory process to compel attendance will issue "the testimony of *any* witness requested by the defense must be shown to be both material and necessary, as a condition precedent to the issuance of process to compel his attendance." Whether a requested witness' testimony is both material and necessary is a question to be determined by the particular facts of the individual case. Here, no such showing was made by the defense.

An accused's right to the issuance of a compulsory process is provided for in Article 46 of the Code, 10 USC § 846. The Article states:

"The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe. Process issued in court-martial cases to compel witnesses to appear and testify and to compel the production of other evidence shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue and shall run to any part of the United States, or the Territories, Commonwealths, and possessions."

The President, pursuant to authority contained in this Article, has prescribed rules governing the issuance of such process. He has provided in paragraph 115 of the Manual, supra, that where disagreement exists between opposing counsel as to whether the testimony of a witness requested by an accused would be necessary, the matter is to be referred to the convening authority or the court-martial depending upon the stage of the proceedings in which the issue is raised. Such request for the personal appearance of a witness "will be submitted in writing, together with a statement, signed by the counsel requesting the witness, containing (1) a synopsis of the testimony that it is expected the witness will give, (2) full reasons which necessitate the personal appearance of the witness, and (3) any other matter showing that such expected testimony is necessary to the ends of justice." This procedure was not

followed in the instant case. We are therefore constrained to conclude that on the facts presented in the instant case, together with the defense counsel's failure to comply with the Manual provision, the refusal to subpoena the requested witnesses did not prejudice the accused.

An even more basic reason exists why the failure to subpoena these witnesses did not prejudice ■■■■■■■ the accused. Even had ■■■■■■ they appeared at trial, their testimony would not have been admissible because the issue of self-defense was never raised. The general rule is that in order to introduce evidence of the character or reputation of the victim for violence, there must be evidence tending to show that the accused acted in self-defense. Such evidence is received in those cases to show that the victim was the aggressor and that the accused's actions were affected by the victim's turbulent disposition. Wigmore, Evidence, 3d ed, §§ 63 and 246. Although defense counsel stated in the out-of-court conference that an issue would be raised "as to whether or not the accused in this case was acting in self-defense," such issue was never in fact presented. The accused neither testified nor presented evidence in his own behalf raising the affirmative defense, nor does such evidence appear in the Government's case. The accused made no showing that he intended to raise the defense of self-defense by any of the witnesses requested. The evidence of record clearly establishes that the accused was the aggressor when he hit the victim over the head with the pistol butt and then shot him. The victim of the assault was not called as a witness for either side; therefore, evidence would not have been admitted for the purpose of impeachment. Thus, in the absence of any evidence that the accused acted in self-defense, evidence showing the violent and contentious character of the victim would have been irrelevant and inadmissible. Cf. United States v Desroe, 6 USCMA 681, 21 CMR 3. Accordingly, the first issue raised is decided adversely to the accused.

544

## II

The appellant next presses upon us the contention that the law officer erred by improperly restricting cross-examination of the Austin police investigator regarding the written statement made by the accused. The officer had been called as a prosecution witness and examined concerning an oral confession made by the accused shortly after the offense was committed. On direct examination, he was asked whether a written statement had been made by the accused. He replied that a written statement had been made; however, not at that time. No further testimony was elicited concerning the written statement. On cross-examination, the defense counsel inquired concerning the contents of the written statement. Trial counsel objected to the admission of such testimony on the ground that it exceeded the scope of direct examination. The law officer sustained the objection. ■■■■■■■ We recognize the general rule that the extent of cross-examination is largely a matter resting within the sound discretion of the law officer; however, as the Manual, supra, suggests, "reasonable latitude" should be permitted the cross-examiner. Paragraph 149b(1), Manual, supra. We believe the law officer unduly restricted the cross-examination of the officer concerning matter which had been brought to light on direct examination. However, in the setting of the instant case such error was not prejudicial because immediately after the witness was excused by the prosecution, he was recalled by the defense and was questioned at length concerning the written statement. Accordingly, we find no reversible error in the second issue raised.

## III

We begin our discussion of the third issue where the second left off. The police investigator, upon being called as a defense witness, was questioned concerning the written statement made by the accused. It appears that nine days after the oral confession had been made, the accused, while still in the custody of the civilian police, executed a writ-

ten statement at the suggestion of his civilian counsel. The defense sought to introduce this statement over trial counsel's objection that "the statement is hearsay evidence and deprives the Government of the right of cross-examination of a material witness in this case." Defense counsel argued that the written statement merely served to "clarify" the oral confession as to many factual details which had been omitted. The law officer sustained the objection on the grounds that the written statement not only constituted hearsay evidence but that it was also "self-serving in some respects."

In this statement the accused related in great detail his previous business dealings with the victim. It appeared that several months before the occurrence of the instant offense, the accused had left his automobile at Ryan's service station to have repair work done. When the work was completed, he was unable to call for the car because he had been "put in the stockade for 3 months and 5 days for being AWOL." Upon his release from confinement, he learned that Ryan had been renting his car. He demanded that Ryan return the car, but the latter refused to surrender it until the repair bill—amounting to approximately $200.00—was paid. He requested permission to "try out the car" and Ryan accompanied him on a test run. After driving a distance, the accused stopped the car and Ryan snatched the keys out of the ignition and told the accused to get out of the car. The accused refused. Ryan pulled out a gun. The accused got out of the car. After paying $65.00 of the bill, the accused contacted a civilian attorney—the same one who represented him at the trial—who helped him "file a complaint" to enable him to get his car back. Ryan retaliated by turning the car over to a finance company in San Antonio, in return for which he received $117.00.

On the evening in question, the accused had borrowed a car from one friend and a pistol from another. He then drove to Austin, where he had a few drinks. He went to Ryan's station and inquired about an overcoat which had been left in the car. Ryan allegedly stated that he would not surrender the overcoat until the balance of approximately $20.00 was paid. He told the accused "to get on away," and that he didn't want to talk about it. The accused became angry and when Ryan "stuck his head under the hood," he hit him on the side of the head with his fist.[1] Ryan then came out from under the hood with a wrench in his hand and it appeared to the accused that he was going to hit him.[2] The accused then pulled out the pistol and shot Ryan one time. He then retreated to a waiting car and friends of his later hid the pistol for him. A Criminal Investigation Detachment agent was waiting for him when he returned to his barracks.

The accused urges that the law officer erred in refusing to admit the written statement into evidence. He concedes that a prosecutor, who possesses several incriminating—but unrelated—statements by an accused, has the right to introduce any one of them without accounting for the others and that the rule is unaffected by the fact that the statement introduced in evidence be an oral one while a prior or subsequent written statement is not offered. Taylor v State, 31 Ala App 590, 20 So2d 239; State v Favorito, 115 NJL 197, 178 Atl 765; Torrence v State, 85 Tex Cr 310, 212 SW 957; People v Giro, 197 NY 152, 90 NE 432. He contends, however, that the rule is otherwise where the several statements are not unrelated and appear in fact to be a single statement or the result of a single transaction or course of evidence.

The general rule is that where the prosecution relies upon part of a statement, the defense may require by cross-examination or otherwise that the remainder of the statement be presented. Paragraph 140a, Manual, supra. This is so, even though the statement or con-

---

[1] In the oral confession the accused stated that he had hit Ryan on the head with a pistol butt.

[2] The accused made no claim in his oral confession that he thought the victim would hit him with the wrench.

versation includes exculpatory or self-serving declarations. See 2 ALR 1017 for an excellent discussion of the authorities. The reason for the rule is obvious. It would be manifestly unfair to an accused to permit the prosecution to pick out the incriminating words in the statement or discussion and put them in evidence while at the same time excluding the remainder of the statement or conversation, in which the accused seeks to explain the incriminating passages. However, a separate statement or utterance of an accused, which is totally disconnected or unrelated to the statement containing the confession is not admissible as part of such statement. 22 CJS, Evidence, § 820. The question for our determination is whether the accused's written statement is separate and unrelated from the oral confession, or whether it is part of or the product of the same transaction or course of action.

The accused places great stress on cases such as People v Hepner, 285 Mich 631, 281 NW 384, and ▆▆▆▆▆ ▆ Sanderson v State, 109 Tex Cr 142, 3 SW2d 453. In Hepner, supra, the prosecution had introduced in evidence a pretrial statement made by the accused. The defense was thereafter restricted in its efforts to cross-examine the recipient of the statement concerning another statement the accused had made some thirty-five minutes earlier. In holding that the trial court erred, the Supreme Court of Michigan said:

". . . The 1:10 statement was relative to the case and made within 35 minutes of the statement introduced in evidence. The former contemporaneous statement may be considered an integral part of the latter and admissible as such."

In the Sanderson case, supra, the accused immediately after killing his father, started toward town where he met a constable. The accused then stated, "I have killed Dad." He was taken into custody and delivered to the courthouse where he continued in a highly nervous and excited condition. About thirty minutes later he made a further statement explaining his pre-

vious statement. The trial court refused to allow the defense to prove the subsequent statement. On appeal, the Court held it error to exclude evidence of the subsequent statement because it was "but a continuation of the former conversation" had between the witness and the accused. The flaw in the accused's reliance on these cases lies in the fact that in both the courts also rely on the *res gestae* doctrine to support admissibility. Here neither of the accused's statements come within the *res gestae* rule. Paragraph 142*b*, Manual, supra.

The facts of the instant case, however, are clearly distinguishable from the cited cases, for here the statement the accused sought to have admitted was made nine days after the oral confession and at the direction of his counsel. In addition, the accused, in the statement, offered no justification or excuse for his unprovoked attack on Ryan. He does not say the victim was the aggressor, or that he was put in fear. He merely says that after he hit him on the head with his fist (in the oral confession he said he hit him on the head with the pistol butt), the victim lifted his head from under the hood, at which time he was holding a wrench. That the victim had a tool in his hand was certainly not a surprising circumstance in view of the fact that he was repairing an automobile at the time. Furthermore, the major portion of the written statement related to the prior business dealings between the two. Assuming that the accused's account of their prior dealings is accurate, it cannot be said that the victim's retention of the automobile to effect collection of a sizable repair bill was improper. In fact, defense counsel, in closing argument on sentence, conceded that it was "naturally right" that a "mechanic's lien under out [sic] state law" existed, although contending that such a possessory lien does not give one the right to use the automobile.

We are not to be understood as saying the sole test to be applied is that relating to the elapsed time between the two statements. The time element is but one factor—although an important

one—to be considered in every case. In Lewis v State, 173 Miss 821, 163 So 387, a police officer testified that the accused when arrested admitted killing the deceased. On cross-examination of the officer—out of the jury's presence—it developed that after the accused had admitted killing the deceased, he asked permission to, and did, drink a cup of coffee. He then walked with the officer about one block where they entered an automobile and drove to the jail. After going about two blocks, the accused was asked, "How come you to kill that man," to which the accused replied, "He was hitting me over the head, and I had to do it." This exculpatory statement was not permitted to go to the jury. On appeal the court, in holding that no error was committed in excluding the subsequent statement, said:

"The appellant says that the exculpatory statement made by him to the deputy sheriff was a continuation of and practically contemporaneous with, and part of, his statement that he had killed the deceased; and he invokes the rule that all of the confession or admission must be admitted in evidence, including the exculpatory parts thereof, when the confession or admission is introduced. This case does not come within that rule. The conversation in which the admission was made had ended. There was nothing then said by any person to indicate that it would be continued, and the exculpatory statement afterwards made was no part thereof, and constitutes a mere self-serving declaration. No error was committed in excluding it." [Accord, Crenshaw v State, 225 Ala 346, 142 So 669; Howard v Commonwealth, 234 Ky 45, 27 SW2d 410.]

In State v Jones, 47 La Ann 1524, 18 So 515, it was held not competent for an accused to show upon cross-examination of the jailer, called as a state witness, that he had, at different times, eight to ten days subsequent to making the confession, made contrary statements. The court considered it "quite evident that these statements constituted no part of the confession, and are inadmissible as part of the *res gestae*." State v Netherton, 128 Kan 564, 279 Pac 19, presents an interesting case in contrast. There the accused had been continuously questioned over a period of some four or five days concerning the murder of his wife. At the end of this time he executed a written statement. The prosecution called a sheriff, with whom the accused had talked, and the former related parts of his conversation with the accused. The defense was thereafter restricted in attempting to cross-examine concerning the written statement. In holding that the written statement was entitled to admission, the court reasoned as follows:

"This constitutes the statement in question. Was it a statement of the defendant separate and apart from the conversation that had been in progress for four or five days, or was it the concluding and culminating part of that conversation described by the sheriff—a sort of summary of such extended conversation? If it was a part of the conversation, it should have been admitted upon the request of the defendant as a part of the cross-examination of the sheriff. It was most certainly a part of the conversation which continued for four or five days along the same line, as shown by reference to what was said shortly prior and by indicating that a question was a repetition of a former question. This last part was no different from what had been going on at the same place and between the same parties for many days. The only difference is that the court reporter took down or typed this concluding part of a long drawn-out conversation. *A comparison of the questions and answers contained in the statement shows most of it to be along the same line and substantially the same as the conversation related by the sheriff and none of it to be on different or irrelevant subjects. Under these circumstances, the statement must be held to be a part of the same conversation which the sheriff related, and it was error for the court to refuse to admit it upon request of the defendant as*

*part of the cross-examination of the sheriff."* [Emphasis supplied.]

All factors considered, including the elapsed time of nine days between the oral confession and the written statement, that the statement was made at the specific request of counsel, and that the greater part of the statement related to matter wholly unconnected with the offense and with the subject matter of the oral confession, we believe the written statement was unrelated to and constituted no part of the oral confession. We conclude, therefore, that the rule which permits an accused to prove the remainder of a statement, where the prosecution has brought out a part thereof, does not apply here, and that the law officer did not err in refusing to admit the written statement into evidence. The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I would concur outright if it were not for the favorable reference to United States v Thornton, 8 USCMA 446, 24 CMR 256. I prefer not to adopt the views expressed therein.