UNITED STATES, Appellee

v

CLAUDE A. JONES, Private, U. S. Army, Appellant

21 USCMA 215, 44 CMR 269

No. 24,361

March 3, 1972

*Captain J. Houston Gordon* argued the cause for Appellant, Accused. With him on the brief were *Stewart Pettet Davis, Esquire, Colonel George J. McCartin, Jr.,* and *Captain Francis X. Gindhart.*

*Captain M. Douglas Deitchler* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway,* and *Captain David E. Wilson.*

## Opinion of the Court

QUINN, Judge:

The accused was brought to trial before a judge, sitting as a general court-martial without court members, for willful disobedience of the order of a superior noncommissioned officer (Charge I), assault upon a superior commissioned officer by "striking" and "kicking" him (Charge IV), willful disobedience of an order by the same officer (Charge II), and disrespect to the same officer (Charge III). He was convicted of the first two offenses and acquitted of the latter two. On this

216

appeal, he challenges the correctness of two rulings by the trial judge.

Before trial, the accused had submitted to trial counsel a written request for the subpoena of six persons as witnesses for the defense. On receipt of a request of this kind, trial counsel is required to provide for the attendance of the witnesses, unless he disagrees "as to whether the testimony of a witness so requested would be necessary." Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 115. When disagreement exists, the Manual requires that the matter "be referred for decision to the convening authority or to the military judge . . . according to whether the question arises before or after the trial begins." The request was submitted on January 8th; the trial proceedings were begun on January 21st. However, the matter of disagreement was apparently not submitted to the convening authority for decision but to the trial judge on January 21st.[1]

The request was discussed at some length by counsel and the judge. Among other things, trial counsel maintained that it did not comply with the requirements of paragraph 115 of the Manual in that it did not contain a "sufficient synopsis" of the expected testimony and there was "no statement of the full reasons necessitating their personal appearance." The trial judge granted the request as to one witness but denied it as to the other five on the ground "of insufficient compliance with paragraph 115 of the Manual."[2]

The terseness of the ruling provides no indication as to whether it was based solely on the contents of the written request or whether the trial judge also considered new matter presented at the hearing. However, the judge asked for, and received, the report of the Article 32 investigation; having asked for the report, presumably he read it. Also, to define more precisely the reasons for the request for one witness, the judge asked defense counsel for clarification. Having received the clarification, presumably he considered it in his ruling, especially since he granted the request for this witness. These circumstances compel the conclusion that the correctness of the ruling denying the request as to the other witnesses must be determined on the basis of the matters presented at the hearing, not just that contained in the written request.

Following his general objection to the sufficiency of the synopsis of expected testimony, trial counsel first offered to stipulate to the testimony of Gollner, a witness who had testified for the Government at the Article 32 investigation, but whom the Government did not propose to call at the trial.[3] Then, moving beyond the offer to stipulate, trial counsel stated that if the defense "still wishes" to have Gollner present, he would "not balk at that" and would "proceed and take appropriate action to have him here." Although defense counsel did not directly refer to trial counsel's statement, his arguments manifested a continued de-

---

[1] Since the parties apparently desired a ruling on the merits by the trial judge, we pass over consideration of the effect of the failure of trial counsel to submit the matter initially to the convening authority. Cf. United States v Thornton, 8 USCMA 446, 449, 24 CMR 256 (1957); United States v Davis, 19 USCMA 217, 219, 41 CMR 217 (1970).

[2] In pertinent part, Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 115, provides as follows: ". . . A request for the personal appearance of a witness will be submitted in writing, together with a statement, signed by the counsel requesting the witness, containing (1)

a synopsis of the testimony that it is expected the witness will give, (2) full reasons which necessitate the personal appearance of the witness, and (3) any other matter showing that the expected testimony is necessary to the ends of justice."

[3] In United States v Thornton, 8 USCMA 446, 24 CMR 256 (1957), we pointed out that an "accused cannot be forced to present the testimony of a material witness on his behalf by way of stipulation." See also United States v Sweeney, 14 USCMA 599, 34 CMR 379 (1964); United States v Jackling, 42 CMR 778 (ACMR 1970).

sire that Gollner be summoned as a defense witness. Thus, by the end of the discussion and the argument, it was apparent that no disagreement existed between defense and trial counsel as to the necessity for Gollner's appearance. Consequently, no issue existed for decision by the trial judge; and trial counsel should have taken "timely and appropriate action to provide for the attendance" of the witness. Manual, supra, paragraph 115a, page 23–1.

As to the remaining witnesses, the written request stated that they would "testify to different circumstances in the relations" between the accused and the officer involved in three of the four offenses, and their testimony would show the offenses "were the consequence of a premeditated and deliberate" design on the part of the officer. At trial, defense counsel represented that the verdict would depend upon "the word of a lieutenant against the word of a private." He asserted that the requested witnesses knew the ■ background of the relations between the officer and the accused, and their testimony would "show to this court that the lieutenant is not telling the truth." The import of these averments is clear: The accused's guilt or innocence would depend upon the officer's credibility *vis-a-vis* the accused's; the requested witnesses would testify to circumstances tending to show bias or prejudice on the part of the officer toward the accused; that the officer's feelings against, and attitudes toward, the accused would affect his credibility. Trial counsel did not show "either by . . . evidence or from matters already of record" that the defense averments were untrue or the request was "otherwise frivolous." Greenwell v United States, 317 F2d 108, 110 (CA DC Cir) (1963). The officer was the Government's principal witness. Impugning his credibility would unquestionably be material and necessary for the accused. The matters as to which the requested witnesses would testify were reasonably suited to that purpose. See Manual, supra, paragraph 115b; United States v Robertson, 14 USCMA 328, 335–336, 34 CMR 108

(1963). On the evidence before him, therefore, the trial judge should have granted the request. Cf. United States v Harvey, 8 USCMA 538, 25 CMR 42 (1957).

Improper denial of a request for a defense witness is not automatic ground for reversal of an otherwise valid conviction; it must appear that the denial resulted in a fair risk of prejudice to the accused. United States v Sweeney, 14 USCMA 599, 603–604, 34 CMR 379 (1964); Greenwell v United States, supra, page 111. From the record, it is apparent that the requested witnesses would have testified only as to matters affecting the officer involved in the incident resulting in Charges II, III and IV. Of these charges, the accused was convicted only of the assault alleged in the specification of Charge IV. The accused's account of the incident is directly opposed to the officer's. He testified that without excuse or warning, the officer "smacked . . . [him] on the side of the face"; and he maintained that he did not "hit" or "kick" the officer. Thus, the officer's credibility, or lack of it, was a material matter in determination of the accused's guilt or innocence. Denial of the request for witnesses who would testify to circumstances unfavorable to the officer's credibility was patently prejudicial to the accused.

In a second assignment of error, the accused contends that the trial judge improperly curtailed defense counsel's cross-examination of two Government witnesses. Six questions disallowed by the trial judge are cited in support. Three of the questions dealt with matter purportedly relevant to the offenses involving the officer. Since the accused was acquitted of two of these offenses and we have determined that prejudicial error occurred in regard to the third, we need not explore the correctness of the ruling as to these questions. The remaining questions were asked of Sergeant Hargrove.

Charge I alleged that the accused had received, and willfully disobeyed, a law-

ful order from Sergeant Hargrove to report to the supply room. Hargrove testified as a Government witness. He was the first sergeant of the accused's company. On direct examination, he testified he had advised the accused he "needed" persons to work in the supply room, and he ordered the accused to report there. The supply room was located in the basement of the company building. Hargrove testified that the accused indicated he was " 'not going to do it,' " and instead of going to the basement went "up the stairs" to the third floor. Trial counsel objected to each of the three questions asked Hargrove on cross-examination.

From a long discussion of the relevancy of two of the three questions, it is manifest that defense counsel desired to elicit information regarding "the attitude and behavior of the officers" of the company. Defense counsel noted that "unfortunately" Hargrove was the "first witness," but he wanted "to start . . . [the] foundation" for his case. The trial judge sustained the objection to one of these two questions on the ground the question was irrelevant; as to the other, he ruled the question was "outside the scope of direct examination." Since the questions related to new matter, the rulings were correct, and well within the judge's discretion as to the order of proof. Manual, supra, paragraph 149$b$(1); United States v Harvey, supra, page 544.

The third question asked Hargrove was what he "knew, if anything, about Private Jones' political or ideological beliefs." Trial counsel objected to the question on the ground it was irrelevant and not within the scope of the direct examination. Again, the colloquies as to the propriety of the several questions indicate that this question was the first of a proposed series to elicit information concerning the attitudes of the officers of the company toward the accused. Confirmation of the relationship and purpose of all three questions appears in the observation in appellate defense counsel's brief that the "relevance of such [political] beliefs" by

the accused is that these beliefs made the officer involved in the incident that resulted in Charges II, III and IV "despise" the accused. So construed the question did not deal with Hargrove's direct examination, or his credibility, and was properly excludable. However, part of defense counsel's argument at trial suggests that the question may also have been intended to probe Hargrove's own attitudes toward beliefs he "did not agree with," preliminary to determining whether those attitudes prejudiced him against the accused.

The scope of cross-examination to challenge the credibility of a witness is broad. Manual, supra, paragraph 149$b$, page 27–54. Appellate Government counsel concede that cross-examination as to political beliefs may be proper to disclose bias or prejudice on the part of the witness, but they contend that the question in issue was "not framed with any particularity," and, for that reason, was properly excluded. At the point the question was asked Hargrove, he had given no testimony remotely indicative of his feelings toward particular political beliefs. Until evidence of that was presented, Hargrove's knowledge of the accused's political beliefs was not relevant to the issue, and unrelated to Hargrove's credibility. Certainly, the trial judge could have allowed Hargrove to answer, subject to the condition that his answer be connected to issues in the case, but we cannot conclude that his refusal to do so was an abuse of his discretion to determine the proper order of proof. Disallowance of the question was not error.

We set aside the decision of the Court of Military Review as to Charge IV. The difference in severity between Charge IV and the offense of which the accused remains convicted is so great that we do not doubt that the finding of guilty of Charge IV was the dominant factor in the imposition of the punitive discharge. See Manual, supra, paragraph 127$c$, section A, page 25–12. Accordingly, we return the record of trial to the United States Army Court of

Military Review for further consideration. In its discretion, the court may dismiss Charge IV and reassess a sentence for Charge I which does not include a punitive discharge, or it may order a rehearing on Charge IV and the sentence.

Chief Judge DARDEN and Judge DUNCAN concur.